ABRAHAM B. CLARK, v. ABRAHAM BININGER.

THOMAS J. BARR. Receiver, etc., Appellant, v. GEORGE N. TITUS, Respondent.

The willful refusal of a receiver to obey an order of the court, requiring a payment by him out of funds in his hands as receiver, is a disobedience by a person "appointed to perform * * * ministerial services" of a lawful order of the court, and a misdemeanor in his office and willful neglect of duty therein within the meaning of section one of that portion of the Revised Statutes relating to "proceedings as for contempt" (2 R. S., 534, § 1, sub. 1); it does not come within the fourth section (2 R. S., 535, § 4) authorizing the issuing of a precept without notice to commit a person disobeying an order "made for the payment of costs or any other sum of money."

It is therefore proper practice in such case for the court to grant an order for the receiver to show cause "why he should not be punished for the alleged misconduct." (2 R. S., 535, § 5.)

The receiver must have an opportunity to be heard, and there must be an adjudication that he was guilty of the misconduct, before he can be punished.

Where, in proceedings upon an order to show cause the receiver is adjudged guilty of the alleged misconduct, this court cannot upon appeal therefrom review the order directing the payment; the Supreme Court has power

to direct its receiver as to the disposition of funds in his hands, and its order to that effect, if not appealed from, must be obeyed whether correct or not; the propriety of the exercise of the power cannot be considered on such an appeal.

Where it appears that a receiver has funds in his hands sufficient to satisfy a lien thereon and wilfully refuses on demand to obey an order of the court directing him to pay such lien, it is a justifiable inference that such conduct impedes, impairs and defeats the rights and remedies of the lienor to the extent of the lien; and upon an adjudication to that effect a fine may be imposed upon the receiver to the amount of the lien (2 R. S., 538, §§ 20, 21); and the power of the court is not limited to a fine of $250 with "costs and expenses" (§ 22).

It is not necessary that the order imposing the fine should in form adjudge that actual loss or injury has been sustained to the amount of the fine; it is sufficient if it appears that such loss has been suffered.

Nor is it essential to show that the loss or injury is irremediable and hopeless.

After the granting of an order fining B., a receiver, the amount of a lien upon the fund in his hands, because of willful disobedience of an order requiring him to pay such lien, and directing his imprisonment until he paid it, an order was granted forbidding K., the receiver of a savings bank, in which bank B. had deposited a portion of the fund, from paying over to B. any part of said fund so deposited by him, and directing K. to pay all dividends thereon to T. the lienor. *Held*, that the order should be modified by inserting a clause that all moneys paid by K. to T. should be applied in reduction of the fine imposed upon B., and that B. upon showing any sum in the hands of K. as such receiver, belonging to the fund and payable to B., may have that sum applied to the reduction of his fine.

(Argued November 19, 1878; decided December 3, 1878.)

APPEALS by Thomas J. Barr, receiver, from two orders of the General Term of the Superior Court of the city of New York, affirming orders of Special Term. (Reported below, 11 J. & S., 126, 344.)

This was an action between partners, the parties composing the firm of A. Bininger & Co. Thomas J. Barr, the appellant, was appointed receiver of the partnership assets. Subsequently, upon application of the assignee in bankruptcy of the parties, an order was granted directing said receiver to transfer and deliver to said assignee all of said assets, reserving, however, sufficient to pay and satisfy certain liens upon the fund, and among others a lien in favor of George N. Titus, respondent. It was referred to a referee to ascertain

the amount of this lien; the report found it to be $5,237.80. The report was confirmed by order of the court, by order dated April 16, 1877. The order also directed Barr to pay this sum out of the reserved fund in his hands, less whatever sum should be paid thereon by the assignee in bankruptcy within ten days after service of copy of the order. No appeal was taken from this order. The order was served upon him April 19, 1877, and demand of payment made and refused. After the order was granted Titus received from the assignee a sum sufficient to reduce his lien to $4,254.06. Notice of this was given to Barr and demand made for the balance, which he refused to pay. An order was thereupon obtained by Titus requiring Barr to show cause why he should not be punished as for a contempt for disobedience of said order of April 16, 1877. The moving affidavits set forth the above and also averred, in substance, that Barr had realized from the property reserved by him more than sufficient to pay all the claims provided for and all costs, expenses and commissions; that he had appropriated to his own use a large amount of such proceeds claiming it as commissions, but to which he was not entitled, and that he had filed no inventory or account. Mr. Barr in his opposing affidavit alleged, in substance, that the property remaining in his hands "did not on sale realize near as much as the inventory value;" that a large proportion of the debts were uncollectable, and he was obliged to pay out large sums in attempting to collect; that "of the proceeds of the sale and collection a large proportion has been paid out for legitimate expenses, and the balance was placed to the credit of deponent as receiver" in the Bowling Green Savings Bank, which bank was deemed safe and secure, but which bank subsequently failed "without deponent having any knowledge, information or reason to believe that it was in embarrassed circumstances;" that at the time of such failure deponent had on deposit to his credit as receiver $9,302,58. There were further allegations to the effect that all the proceeds of the property retained, except

such deposit and deponent's "legitimate expenses and commissions have been exhausted in the payment of proper and legitimate expenses." The amounts paid or to whom or for what services were not stated.

On August 7, 1877, the court granted an order adjudging Barr in contempt "in having wilfully disobeyed the order" of April 16, 1877, "and that such misconduct was calculated to and actually did defeat, impair and prejudice the rights and remedies of said George N. Titus herein to the extent" of the said sum of $4,254.06. It imposed a fine upon said Barr "for his said misconduct, of $4,254.06; and adjudged that he stand committed to the common jail until said fine be paid. This was one of the orders appealed from. The other order was granted December 3, 1877, on motion of said Titus. By it Shepard F. Knapp, as receiver of said The Bowlings Green Savings Bank was enjoined and restrained from paying over to Barr, receiver, etc., any money, dividend, etc., on account of his deposit as such receiver in said bank, and that said Knapp pay over to Titus all moneys or dividends that should be declared or become payable out of the assets of the bank upon account of said deposit, and also enjoining and restraining said Barr, until the payment by him to Titus of the amount of the fine, from collecting or receiving from Knapp any moneys or dividend on account of said deposit.

*A. J. Vanderpoel*, for appellant. The receiver was not guilty of contempt in failing to comply with the order of April 16, 1877, because it was not in his power to do so. (*Doran* v. *Dempsey*, 1 Brad., 490; *Weeks* v. *Smith*, 3 Abb. Pr., 211; *McCartin* v. *Syckel*, 10 Bosw., 694.) The order of April 16, 1877, was simply an order for the payment of money and falls within the provisions of section four of 2 R. S. [Edms. ed.], 554, and a person committed thereunder is entitled to the liberties of the jail and to the benefit of the statute respecting assignments by imprisoned debtors. (*People* v. *Bennett*, 4 Paige, 282; *Patrick* v. *Warner*, id., 397; *Watson* v. *Nelson*, 69 N. Y., 537, 544.) The order adjudg-

ing the receiver in contempt is erroneous because it imposes a fine and directs that he stand committed to jail until said fine is paid. (2 R. S. [Edm's. ed.], 552; *Rugg* v. *Spencer*, 59 Barb., 399; *People* v. *Compton*, 1 Duer, 516; *Ludlow* v. *Knox*, 7 Abb. Pr. [N. S.], 411–421; *Watson* v. *Nelson*, 69 N. Y., 542.) The court had no power to adjudge the receiver guilty of contempt so long as it appeared that he had not been duly served with all the papers upon which the motion was based. (*Ward* v. *Arenson*, 10 Bosw., 589.) The order of injunction of December 3, 1877, was erroneous because granted after the action had been discontinued, except for a special purpose, and because it in effect enjoined the receiver from exercising the duties of his office. (Code of Civil Procedure, §§ 603, 604; *People* v. *Sampson*, 25 Barb., 254.)

*Amasa J. Parker*, for respondent. The deposits by the receiver in the Bowling Green Savings Bank were unauthorized. (*O'Mahony* v. *Belmont*, 62 N. Y., 133, 150; *Solway* v. *Solway*, 2 R. & M., 218; *Fletcher* v. *Dodd*, 1 Ves. Jr., 85.) His alleged payments of expenses were unauthorized. (Code, § 469, rule 154 of Chancery; *In re Carter*, 3 Paige, 148; 2 Danl. Ch. Pr. [Perkins' ed.], 1356.) The receiver was rightly adjudged guilty of a contempt for his disobedience of the order of April 16, 1877, and that he should stand committed until he obeyed it. (3 R. S., 534. § 1, subds. 1, 3; 8 id., §§ 5, 20; *People* v. *Cowles*, 3 Abb. Ct. App. Dec., 507; *Seaman* v. *Duryea*, 1 Kern., 324; *People* v. *Nevins*, 1 Hill, 154; *People* v. *Rogers*, 2 Paige, 103; *Lorton* v. *Seaman*, 9 id., 610; *Lathrop* v. *Clark*, 40 N. Y., 335; *Ford* v. *Ford*, 41 How. Pr., 171; 2 R. S., 534, §§ 1, 20; id., 538, § 21; *Howell* v. *Mills*, 53 N. Y., 323; 1 Burr, L. Dict., 628; *Ford* v. *Ford*, 41 How. Pr., 171; 3 Abb. Ct. App. Dec., 507; 2 R. S., 538, §§ 20, 21.) The receiver had no right to appeal from the order of December 3, 1877. (*Cory* v. *Long*, 43 How. Pr., 492; *Martin* v. *Kanouse*, 2 Abb. Pr., 392; *In re Bristol*, 16 id., 398; *Tallman* v. *Hinman*, 10

How., 89; *In re Colvin*, 3 Md. Ch. Dec., 300, 303; *People* v. *Rogers*, 2 Paige, 103; *Mumford* v. *Stoker*, 1 Cow., 178; *Ont. Bk.* v. *Hallett*, 8 id., 192.)

HAND, J. The court below were right in holding that the affidavit of Barr, presented upon his appearance under the order to show cause why he should not be punished for his contempt in disobeying the order of April 16, 1877, did not sufficiently excuse his disobedience. He had been charged in the moving papers with refusing to pay to Titus, out of the fund in his possession, the sum directed. It may be that he intended to state in his affidavit that, before the order was served upon him, he had in good faith paid out legally all but the amount which he deposited in the Bowery Savings Bank, and that owing to the failure of that bank he was unable to comply with the order, and therefore was not wilfully disobedient. If such is the fact, the statute points out an appropriate remedy even now. (2 R. S., 538, § 20.) But without passing upon the question whether these facts, if established, would have been sufficient to excuse him, it is clear that the affidavit altogether fails even to allege these facts with any certainty. It is singularly vague, and unsatisfactory. It does not claim in terms that he was at its date unable to comply with the order. It does not state whether the payments made by him, and the deposit in the savings bank were before or after the order of April sixteenth. He does not state for what his payments have been made, or their amount, nor deny the reservation of $5,000 to himself. The general expressions, " expend large sums of money ; " " large proportion for legitimate expenses ; " " exhausted in the payment of proper and legitimate expenses," etc., without any further specifications, are too loose to be appropriate or sufficient under the circumstances. We must therefore hold that he did not purge himself of the contempt.

We are also of the opinion that the contempt adjudged, did not come within the fourth section of the statute. The order of April sixteenth, substantially adjudged that he was

in possession of a fund committed to him as an officer of the court, and directed him out of that fund, held by him officially, to pay a certain sum to Titus. This is very different from an order to pay a sum of money at all events. It was a direction of the court to its receiver, as to the disposition of a certain fund in the custody of the court, and committed to him solely as its receiving and disbursing officer. The disobedience of this order comes rather within the first subdivision of the first section of the statute, as a disobedience by a person " appointed to perform  *  *  *  ministerial services " of a lawful order of the court, and a " misbehavior in his office, and willful neglect of duty therein," than the third subdivision, although his offence included those described in the latter subdivision. (2 R. S., 534, § 1, subs. 1, 3.) It was therefore proper practice not to issue a precept without notice to him, as provided in the fourth section, but to grant an order to show cause why he should not be punished for his " misconduct." WOODRUFF, J., was probably right in saying that with reference to the precept under the fourth section, it may be issued *ex parte*, without regard to the ability of the party to pay the money, and whether his disobedience was willful or not. (*People* v. *Cowles*, 3 Abb. Ct. of App. Decisions, pp. 507, 510; see, also, *In re Kelly*, 62 N. Y., 198.) But here a willful contempt, as an officer of the court, was charged, and according to the statute, he must have an opportunity to be heard, and there must be an adjudication that he was guilty of misconduct. All this was done, and we think that the willful refusal of a receiver to obey an order requiring a payment by him out of funds in his hands as receiver, is clearly distinguishable, upon principle and authority, from the ordinary case of failure to comply with a direction to pay a sum of money generally. (*People* v. *Cowles*, *supra ;* RAPALLO, J., *In re Watson* v. *Nelson*, 69 N. Y., 536, 545.)

It is said that the order of April sixteenth was erroneous, but that is not now the subject of review. If the court had power to make it, and their power to direct their receiver as

to the disposition of a fund in his hands will hardly be questioned, the propriety of the exercise of that power cannot be considered on this appeal. The order being within their power, and not appealed from, must be obeyed, whether correct or not. (*Erie Railway Co.* v. *Ramsey*, 45 N. Y., 637, 644; *People* v. *Sturtevant*, 9 id., 266.) We conclude that there was no error in the order adjudicating Barr guilty of contempt, in willfully disobeying the order of April sixteenth.

We are also of the opinion that the affidavits authorized the adjudication that Barr's misconduct was calculated to, and actually did, defeat, impair, and prejudice the rights and remedies of Titus to the extent of the sum specified. It is certainly a justifiable inference, upon the fact appearing that a party officially in possession of a fund willfully refuses to obey an order directing him to pay another the amount of his lien thereon, that such conduct impedes and impairs the rights and remedies of the latter to the extent of the lien. Indeed it absolutely frustrates his remedy.

The point most strenuously urged by the counsel for the appellant that, in the absence of proof, and an adjudication that the misconduct of Barr had produced actual loss or injury to the amount of the fine, the court had no power to inflict such a fine, is one of more difficulty.

The court had no power to impose a greater fine than $250, and "costs and expenses," unless actual loss or injury was produced to Titus, and then no greater fine than would indemnify him, and satisfy the costs and expenses.

The statute gives to courts of record power to punish by fine and imprisonment any misconduct by which the rights or remedies of a party may be defeated, impaired, impeded, and prejudiced. (2 R. S., 534, § 1.) By section twenty, it seems to be required, that in order to authorize any fine or imprisonment under this statute, there should be an adjudication that the misconduct was calculated to, or did actually defeat, impair, impede, or prejudice the rights or remedies of a party. (§ 20.) In the succeeding sections nothing is said of adjudication, but it is provided that "if an actual loss or

injury shall have been produced to any party by the miscon-
duct alleged, a fine shall be imposed sufficient to indemnify
such party, and satisfy his costs and expenses," etc. (§ 21.)
"In all other cases the fine shall not exceed $250, over and
above the costs and expenses." (§ 22.)

When therefore there is an adjudication that the misconduct
was calculated to or did defeat, etc., the rights and remedies,
etc., a fine may be imposed. And this fine is limited to $250,
unless the act complained of has produced loss or injury to
the party complaining.

Under these sections, I do not think it necessary that the
order imposing the fine should in form adjudge that actual
loss or injury has been produced to the amount of the fine.
The fine must not be discretionary or capricious. To exceed
$250, it must in fact be based upon the damages ascertained
by affidavit, or other proper proof to have been suffered by
the misconduct; (*Sudlow* v. *Knox*, 7 Abb. [N. S.], 411,
412) but it is sufficient if it appear that such loss has been
suffered.

Applying these principles to the present case, I conclude,
although not without some hesitation, that the loss is suffi-
ciently established by the moving affidavits, and appears stated
in the order. The order adjudges that the rights and remedies
of Titus have been, not merely impeded or prejudiced, but
actually "defeated" by Barr's misconduct to the extent of
$4,254.06, and interest. From this it seems to us, it neces-
sarily appears that Titus has suffered loss and injury, *injuriam
et damnum*, to that amount. His rights and remedies could
not be wholly defeated to that extent, without that loss
accruing. If the adjudication had been merely that the
misconduct was calculated to defeat, impair, etc., or even
that it had impeded the rights and remedies of Titus, a fine
perhaps could have been imposed, but it could not have
exceeded $250 (FOLGER, J., *Erie R. Co.* v. *Ramsey*, 45
N. Y., 655); but the adjudication here goes much farther,
and shows an entire defeat of those rights and remedies to
the amount of the fine.

The moving affidavits taken together, allege Titus' lien on the fund, to the amount specified, the possession by the appellant of the fund sufficient to satisfy the lien, the demand upon him and his refusal, and the non-payment of any part of the lien except $1,250 received from the assignee. These facts made a *prima facie* case of injury and loss to Titus, to the extent of the amount unpaid upon the lien, by the misconduct of Barr.

In the, in other respects, able and ingenious argument of the learned counsel for the appellant, it was insisted substantially that nothing could be called loss or injury which was not irremediable and hopeless. That as long as it did not appear that the fund had been wholly wasted, dissipated, and destroyed, and that Barr was utterly unable to pay, however wanton and persistent his refusal to part with a dollar of such fund, there was no loss or injury to Titus from such refusal. This position is not in my judgment tenable.

The order therefore of the 7th August, 1877, and that of the General Term, affirming it, must be affirmed, except as incidentally affected by the modification of the order of third of December, as hereafter suggested.

This December order recites that it was made after hearing Barr, and reading the order of seventh August punishing him for contempt, and the papers upon which it was founded.

It seems to us that in view of the last named order, it was unjust to Barr to absolutely forbid the receiver of the savings bank from paying over to him, any part of the fund deposited by Barr, and yet retain unmodified, the order fining him the amount of Titus' lien on that fund, and imprisoning him until he had paid it. On their face, the two orders would seem on the one hand to force Barr to pay out of this fund, Titus' lien and imprison him until he had done so, and on the other forbid him from receiving the only moneys perhaps, within his reach, for such payment. I do not lose sight of the fact that the contempt order imposes a fine, and imprisons him until the fine is paid, and is not merely an order that he stand committed until he comply with the

order of April sixteenth, but I think that with regard to the propriety of the injunction order, it amounts to the same thing.

The order of December third should be modified, by inserting a clause that all moneys paid by Knapp to Titus thereunder, should be applied and credited in reduction of the fine imposed upon Barr by the order of the seventh August, and that Barr, upon showing to the satisfaction of the court, any sum in the hands of Knapp as receiver, belonging to said fund, payable to him, may have that sum applied to the reduction of his fine.

With these modifications, the orders should be affirmed, without costs to either party.

All concur.

Ordered accordingly.