THE PEOPLE ex rel. THE CITY OF ROCHESTER et al., Appellants, *v.* MARTIN BRIGGS et al., Respondents.

THE CITY OF ROCHESTER, Appellant, *v.* MARTIN BRIGGS et al., Respondents.

Every presumption is in favor of the validity of legislative acts, and they are to be upheld unless there is a substantial departure from the organic law.

In order to comply with that provision of the Constitution which declares that "no local or private bill which may be passed shall embrace more than one subject, and that shall be expressed in the title, (State Con., art. 3, § 16), it is not requisite that the most expressive title shall be adopted, nor will courts criticise too rigidly the details of a bill to find extraneous matter. The degree of particularity with which the title of an act is to express its subject, rests in the discretion of the legislature.

Where the title of a local or private act expresses a general purpose or object, all matters fairly and reasonably connected with it, and all measures which will or may facilitate its accomplishment, are proper to be incorporated in the act, and are germane to the title.

Where a local or private act embraces more than one subject, one of which is properly expressed in the title, all of the provisions of the act relating to the subject, not thus expressed, are invalid and will be rejected. But

if the provisions relating to the subject expressed are in no way connected with or dependent upon the others, and if by striking out those others the residue of the act is complete in itself, sensible and capable of being executed, the act, with the void provisions eliminated, is valid and will be upheld. (Grover, Folger and Peckham, JJ., dissenting.)

It is unnecessary that a law, in order to operate as an amendment to a municipal corporation, should specify that it is an amendment to the charter or to any specific act. It is sufficient if the provisions affect the corporation in its governmental capacity.

The words, "the city of Rochester," in the title to the act entitled "An act to amend the several acts in relation to the city of Rochester" (Laws of 1872, chap. 771), signify the corporation of the city; the title expresses a subject, and that one comprehensive enough to embrace all the details of the city charter and government.

The provisions of the twentieth section of said act, which confirms the proceedings of the common council and authorizes a city railroad to lay its tracks upon the sides instead of the center of an avenue, are connected with the regulation of the streets of the city and are embraced in the subject expressed in the title, as are also the provisions of the twenty-fifth section conferring upon the water commissioners authority to contract with the trustees of the villages, through which the water to the city may be conducted, to supply the villages with water, and authorizing such trustees to levy the annual expense with their annual tax. The power to supply villages by contract is incidental to the main purpose of furnishing the city with water, and may serve as the means of attaining it; and the authority conferred upon the trustees to levy the tax is indispensable to render such a contract effectual. (Church, Ch. J. ; Allen and Andrews, JJ., concurring.)

The sections of said act, also, which are not specified as amendments in the act itself, are valid, and effectual as if thus specified.

(Argued December 11, 1872, decided December 24, 1872.)

Appeals from judgments of the General Term of the Supreme Court in the fourth judicial department, entered upon orders affirming orders of Special Term, sustaining demurrers to the complaints, and directing judgments thereon.

The first action was in the nature of a *quo warranto.* The complaint alleged, in substance, that defendants claimed to be commissioners of public works of the city of Rochester, and by virtue of the act entitled "An act to amend the several acts relating to the city of Rochester" (chap. 771, Laws of 1872) threaten to and have usurped the exclusive care

and control of the streets, avenues, etc., of the city, and had advertised for contracts for the improvement of Lake avenue, and for cleaning the streets of the city; that said act is unconstitutional. Judgment of ouster from the office claimed by the defendants was demanded, and that the common council and superintendent of streets of the city be declared to be entitled to all the powers and authority conferred upon them by the city charter prior to the passage of the act.

The object of the second action was to restrain the defendants from tearing up or interfering with the streets or sewers of the city, the complaint alleging that as "commissioners" as aforesaid defendants threatened to tear up and alter various streets, etc., of the city and to open new streets. The defendants demurred to both complaints upon the ground that they did not state facts sufficient to constitute causes of action.

*G. F. Danforth* for the appellants. Chapter 771, Laws of 1871, under which defendants claim to act, is unconstitutional and void. (State Const., § 16, art. 3; *The People* v. *The Supervisors of Chautauqua,* 43 N. Y., 11, 19, 20, 21, 22; *The People ex rel.* v. *Hills,* 35 id., 449, 451; *The People ex rel.* v. *The Commissioners of Highways of Palatine,* 53 Barb., 70, 74.) It is local in its character, and embraces more than one subject, and is defective in title. (*Corning* v. *Greene,* 23 Barb., 34; *Smith* v. *Helmer,* 7 id., 416; *People ex rel. McConville* v. *Hills,* 35 N. Y., 449; *Gaskin* v. *Meek,* 42 N. Y., 186; *People* v. *Allen,* 42 id., 404; *Bradley* v. *Stephens,* 41 id., 619, reversing same case in 2 Abb. [N. S.], 348, and cited in 42 N. Y., 188; *Sun M. Ins. Co.* v. *Mayor,* 8 N. Y., 253; 2 Iowa, 282; *Mayor, etc.,* v. *Colgate,* 2 Kern., 146.)

*E. A. Raymond* for the respondents. The whole of an act is not void because some of its provisions are not within the subject designated in the title, and are therefore unconstitutional. (*Philips* v. *Mayor of New York,* 1 Hilton, 483;

*Town of ·Fishkill* v. *Fishkill and Beekman Plank-road Co.,*
22 Barb., 634; *The People* v. *Same,* 27 id., 445; *People ex
rel. Crowell* v. *Lawrence,* 36 id., 177; *Matter of De Ven-
cenne,* 31 How. Pr., 289, 343; *People* v. *O'Brien,* 38 N. Y.,
193, 195; *Gaskin* v. *Anderson,* 55 Barb., 260; *Pullman* v.
*Mayor of New York,* 54 id., 170; *Leavitt* v. *Thompson,* 56
id., 547; *Rockwell* v. *Nearing,* 35 N. Y., 302; *The People
ex rel. Mitchell* v. *Lawrence,* 54 Barb., 589; *People* v.
*McCann,* 16 N. Y., 58; *Williams* v. *The People,* 24 id.,
405; *People* v. *Draper,* 15 id., 543; *Clark* v. *City of
Rochester,* 24 Barb., 470; *People* v. *Wynehamer,* 3 Kern.,
441; *Commonwealth* v. *Ketchings,* 5 Gray, 486; *Warren* v.
*Mayor,* 2 id., 97; Cooley on Const., 78, 145; *Davis* v. *The
State,* 7 Md., 151; *Phelps* v. *Covington,* 2 Metc. [Ky.], 219;
*Morford v. Unger,* 8 Clarke [Iowa], 82; *O'Leary* v. *Cook,*
28 Illinois, 534; *Dunscomb* v. *Prindle,* 12 Iowa, 1; *Davis*
v. *Bank of Fulton,* 31 Ga., 59; *Blood* v. *Mercelliott,* 53
Penn. St., 391; *Hines* v. *Cydelotte,* 29 Ind., 518; 7 id.,
684; 25 Ill., 181.) The act in question does not embrace
more than one subject, and that is expressed in its title. (*Sun
Mut. Ins. Co.* v. *Mayor,* 4 Seld., 252, 253; *Conner* v. *Mayor,*
1 id., 285; *Brewster* v. *City of Syracuse,* 19 N. Y., 116;
*People* v. *O'Brien,* 38 id., 193; *Litchfield* v. *Vernon,* 41 id.,
125; *People* v. *Lawrence,* id., 139; *S. C.,* 36 Barb., 177;
*Gaskin* v. *Meek,* 22 N. Y., 186; *People* v. *McCann,* 16 N.
Y., 60; *Outwater* v. *Mayor,* 18 How. Pr., 572; *Sharp* v.
*Mayor,* 31 Barb., 572; *People* v. *Hills,* 35 N. Y., 449;
*Clarke* v. *City of Rochester,* 24 Barb., 471; *Mosier* v. *Hilton,*
15 Barb., 657; Cooley on Const., 142–144; 5 Lansing, 149;
Potter's Dwarris on Stats., 100, 102, 103.) The part of the
act relating to the commissioners of public works contains but
one subject, which is expressed in the title. (*People* v. *Flagg,*
46 N. Y., 401.) Officers whose office has been created since
the adoption of the present Constitution may be appointed
in any manner the legislature may direct. (*Greaton* v.
*Griffin,* 4 Abb. Pr. [N. S.], 315; *People* v. *Draper,* 15 N.
Y., 532, 538; *People* v. *Acton,* 48 Barb., 524; *People* v.

*Batchelor*, 22 N. Y., 128; *People* v. *Woodruff*, 32 id., 364, 365.)

Church, Ch. J. The first of the above actions is in the nature of a *quo warranto* to try the title of the defendants to the office of the commissioners of public works of the city of Rochester, and is based solely upon the ground that the act of the legislature, chapter 771 of the Laws of 1872, authorizing their appointment, is a violation of the 16th section of the 3d article of the Constitution of the State, which declares that "no private or local bill which may be passed shall embrace more than one subject, and that shall be expressed in the title," and is therefore void. The act in question contains thirty sections, and is entitled "An act to amend the several acts in relation to the city of Rochester." The first five sections relate to the collection of taxes, auditing accounts, public buildings and other miscellaneous city affairs. The sixth section purports to be an amendment of the 155th section of the consolidated act of 1861, and authorizes the mayor of the city of Rochester to appoint five electors and tax-payers of the city to constitute the commissioners of public works of the city of Rochester, and that and the fourteen subsequent sections relate generally to their powers and duties, and contain a variety of details designed to perfect the system, inaugurated by the act, of managing the improvements and public works of the city, and constitute the most important part of the act. Section 20 confirms the action of the common council in certain improvements in Lake avenue, and authorizes the street railroad track to be relaid on each side of said avenue instead of the center, under the direction of the common council. Section 21 is an amendment to an act passed April 12th, 1872, in relation to public buildings for the use of the city. The next six sections, to and including the 27th, relate to the board of water commissioners appointed under "An act to supply the city of Rochester with pure and wholesome water," passed April 27th, 1872.

The 25th section confers upon the water commissioners

authority to enter upon any public street, highway or railroad, in any of the villages or towns adjoining or in the vicinity of the city through which it may be necessary to conduct water to the city, and lay pipes, etc., therein, and requires that the consent of the trustees of such village or directors of the railroad shall be obtained, and if not obtained such right shall be acquired in the same manner as title to lands. It also authorizes the commissioners to contract with the trustees of any village through which the pipes are so laid, for the supply of such village with water, and in case any such contract is made, the village authorities to levy and collect the annual expense thereof with the annual tax of the village.

Section 28 amends another act in relation to the repair of specified streets, and section 29 repeals all acts or parts of acts inconsistent with this act, and section 30 declares that the act shall take effect immediately.

The provision of the Constitution invoked in this case was adopted to check and prevent certain evils of legislation, and should be enforced by courts whenever it has been substantially violated. Its object was twofold. First, to prevent a combination of measures in local bills, and secure their passage by a union of interests commonly known as "log-rolling." Second, to require an announcement of the subject of every such bill, to prevent the fraudulent insertion of provisions upon subjects foreign to that indicated in the title. It was intended that every local subject should stand upon its own merits, and that the title of each bill should indicate the subject of its provisions, so that neither legislators nor the public would be misled or deceived. (8 N. Y., 252.)

It is not requisite that the most expressive title should be adopted, nor should courts criticise too rigidly the details of a bill to find extraneous matter. Every presumption is in favor of the validity of legislative acts, and they are to be upheld, unless there is a substantial departure from the organic law.

Courts have no concern with the propriety or wisdom of legislation. That power has been committed by the Constitution to the legislative department of the government, and

with its exercise courts cannot interfere. They can only determine whether, in a given case, the legislature has exceeded its authority or violated any provision of the Constitution, and when this point is decided, their duty is performed.

Questions under this clause of the Constitution have frequently been presented to this court, and the general rules applicable to them are familiar and well settled, but from the nature of the subject each case must be decided upon its own facts.

The first inquiry which naturally suggests itself in this case is whether any "subject" is expressed in the title of this act; and if so, what it is. The title is, "An act to amend the several acts in relation to the city of Rochester."

The city of Rochester is a municipal corporation, created by law; and the use of that name in the title refers to such corporation. This is not only the strict legal construction of the title, but such is its popular signification. No one could suppose that it meant anything else than the organized political body known by that name. The name, therefore, "The city of Rochester," is as expressive as if the word corporation had been prefixed to it. The name signifies the corporation of the city; and, when used in connection with the announcement of a bill to amend the several acts relating to the city, it is impossible to give it any other construction. The learned counsel for the appellant refers us to the distinction between the charter, or act of incorporation, and the corporation itself; the former being the act creating, and the latter the thing created. In legal definition this distinction exists; but it has no practical importance in this case. A municipal corporation is a part of the governmental machinery of the State, organized not for the purpose of private gain, like private corporations, but for the purpose of exercising certain functions of government, within a specified locality; and it possesses such powers, and such only, as are conferred upon it by the legislature; and they are to be exercised in such form, mode and manner, and by such agencies as the legisla-

560· PEOPLE ex rel. CITY OF R. et al. *v.* BRIGGS et al. [Dec.,

Opinion of the Court, per CHURCH, Ch. J.

ture may from time to time prescribe, within the limits of the Constitution. The charter, as it is called, consists of the creative act and all laws in force relating to the corporation, whether in defining its powers or regulating their mode of exercise. Under the Constitution of 1821, it required a two-thirds vote to create or alter a corporation; and it was held that "Any act which affects the powers of a municipal corporation by enlarging or abridging them, or applying them to new subjects, or authorizing their exercise on new occasions, or in new modes and forms, *alters* a corporation." (23 Barb., 34.) There may be in some respects, not important to be noticed, a distinction in a municipal corporation in respect to its governmental, legislative, or public character, and its proprietary or private character. We have only to consider it in its public character; and over all its civil, political or governmental powers the legislature is, in the nature of things, supreme and without limitation, unless restrained by the Constitution. (Dill on Municipal Corporations, § 39.) Laws relating to any specified municipal corporation are those which create the body, or define and regulate its powers and prescribe the mode of their exercise, and, taken together, constitute in a practical sense its charter. An act, therefore, in relation to the city of Rochester, whether the word corporation is used or not, is an act which may affect any or all of the corporate powers of the city; and when a bill is advertised as an act to amend the several acts in relation to the city of Rochester, the subject of the corporate powers of the city and their regulation is still more distinctly expressed. Such a title expresses a subject comprehensive enough to embrace all the details of a city charter. The title of this act is in no legal sense different from that of the act passed in 1861, which, with the amendments since made, constitute the present charter (so called) of the city. That title was "An act to amend and consolidate the several acts in relation to the charter of the city of Rochester." The word "consolidate" has no relevancy to the point in controversy, and only signifies that all the acts are to be brought into and re-enacted

in one act. The word "charter" adds nothing to the title, in law or common understanding. At most, it could only be regarded as slightly more expressive of the subject than this; but substantially it is the same. If the invalidity of this act is to be maintained on the ground that no subject is expressed in its title, the city government has been administered since 1861 without any legal authority. The government of nearly every city and village in the State has been organized under acts with similar titles, and no one has been astute enough thus far to discover that they were for that reason invalid. The case of *The People* v. *Hills* (35 N. Y., 449) is entirely unlike this. There, the title was "An act to amend chapter 389 of the Laws of 1851." That act was properly held invalid because no subject was *expressed* in the title. The learned judge, who delivered the opinion in that case, intimated that if the particular section in the act proposed to be amended had been referred to in the title, it would have been good; but I doubt whether that would have cured the defect. The Constitution requires that the subject should be *expressed*. That title expressed no subject, but only contained a reference where the subject might be found. If the title of the act proposed to be amended had been inserted, it would have been free from the constitutional objection. It seems to me very clear that a subject is expressed in this title, which is the government or charter or corporation of the city of Rochester, and hence the bill may embrace all the details of the city government. It is unnecessary that a law, in order to operate as an amendment to a municipal corporation, should specify that it is an amendment to the charter or any existing act. It is sufficient if its provisions affect the corporation in its governmental capacity. The sections of this act, therefore, which are not specified as amendments in the act itself, are as valid and effectual as other parts of the act which are so specified.

The next question is whether any subject is contained in the act not embraced in the title. As we have seen, the subject expressed embraces the details of the city government,

and any provision which relates to that government may be inserted in such an act, and as a general rule the means necessary or proper to accomplish the general design indicated in the title of the bill may be adopted. (19 N. Y., 116; 8 N. Y., *supra; Matter of Mayer, ante*, p. 504.) A subject has a signification according to its application, and it is capable of almost infinite division, and many particular or subordinate subjects may be included in one general subject.

A city charter embraces many minor subjects; and yet they are all embraced in the general subject of the charter or corporation. In an act in relation to Lake avenue it would not be competent to insert provisions respecting Mount Hope avenue. As to such a bill, Lake avenue would be the subject. So in a bill in relation to education in the city, it would be improper to insert provisions in relation to streets or police, unless they were in some way legitimately connected with the subject of education. But where the subject is general, comprehending all the functions of the corporation, provisions in relation to any of them, or necessary, or pertinent to accomplish and carry out any of them, may be, so far as this constitutional clause is concerned, incorporated in the bill. No one can be misled by such a title, and legislators and people are alike notified of the purpose of the act.

It is insisted by the counsel for the appellants that there are several subjects in the act. It is only necessary to notice two of them. The 20th section confirms the proceedings of the common council as to certain improvements in Lake avenue, and authorizes the city railroad to lay its tracks on the sides instead of the center of the avenue under the direction of the common council. This provision is so intimately connected with the regulation of the street by the city authorities as to preclude the idea that it is an independent subject. The authority conferred upon the railroad company is a mere incident to the improvement of the street. The principal point relied upon is that the authority conferred upon the water commissioners by the 25th section of the act, to contract with the trustees of villages through which the water to the city may be

conducted, to supply such villages with water and authorizing the trustees to levy the annual expense with their annual tax, is one or both of them, an independent subject not embraced in the title.   It is not denied that provisions for furnishing the city with a supply of water relate to the legitimate functions of a city government, and are properly included in such a bill as this.   That object it seems was secured by an independent bill to which these provisions are amendments.   The purpose of both is to furnish the city with water for extinguishing fires and other public uses, and also to furnish the inhabitants of the city with pure water for domestic purposes.   The latter may be regarded as a means or instrumentality of accomplishing the former.   To secure this object it is assumed to be necessary for the city authorities to go beyond the limits of the city to procure the requisite supply, and in doing so they must come in contact and deal with private and other interests in no way connected with the city.   They must take private property, pass over and use public highways, streets, and perhaps railroads.   The authority to secure these rights, although it may involve details in no other way connected with the city, and may affect other persons or corporations and their property, does not constitute it an independent subject.   The power to supply villages with water by contract is incidental to the main purpose, and may serve as a means of attaining it.   The authority conferred upon the trustees to levy the tax, was indispensable to render the contract effectual.   The power to sell involves the power to buy and pay for, and taxation was the only mode which could be adopted for that purpose.   The choice of means is with the legislature, and we cannot detach a mere instrumentality and declare it independent, unless it is entirely incongruous and foreign to the principal subject.   An act entitled "An act for the relief of J. L," was held valid by this court, although it authorized the common council of a city to levy a tax and pay the claimant $600 beyond the contract price for building a sewer.   (19 N. Y., 116.)   The court said: "The different steps by which the relief is to be brought about are not distinct subjects, but

are minor parts of the same general subject.   The degree of particularity with which an act is to express its subject is not defined in the Constitution, and rests in the discretion of the legislature."   And in 8 N. Y. (*supra*) the court said: "Whether the description of the subject may not be more specific is a question for the legislature."

It seems to me that it would be going too far for the courts to declare a measure, adopted by the legislature to accomplish a given purpose, a subject independent of that purpose, where we can see that it would or might facilitate its accomplishment.   Within this limitation the judgment of the legislature is conclusive.   Under a similar provision in the Constitution of Kentucky, it was held that in an act entitled "An act to amend the charter of the Cincinnati and Covington Bridge Co.," a provision that the bridge company might sell and the city of Covington might subscribe for $100,000 of the stock, and sell the bonds to the city and levy a tax to pay them, was valid.   The court said: "None of the provisions of a statute should be regarded as unconstitutional where they all relate directly or indirectly to the same subject, have a natural connection, and are not foreign to the subject expressed in the title.   *   *   *   The power to sell the stock to the city of Covington requires that a power should be conferred on the latter to subscribe and pay for it; for without such a power, the power to sell would be nugatory. The subject is the same."   (2 Met., 219.)

In 27 Ill. R., 534, it was held that, in an act entitled "An act to incorporate the North-western University," a provision prohibiting the sale of spirituous liquors within four miles of the location of the college was valid under a similar constitutional provision, upon the ground that it was competent to embrace within the act everything designed to facilitate the object expressed. The court say: "Its purpose was to keep far away from the members of the institution the temptation to intemperance and its attendant vices," and that it was not objectionable because others might be affected by it.   Under a similar pro-

vision in the Constitution of Pennsylvania, it was held that " An act to increase the boundaries of Forrest county," provisions for the location of the county site, and procuring donations for erecting county buildings, were connected with the subject expressed in the title and were valid. (53 Penn. R., 391.) Similar decisions have been made in other States where this constitutional clause is found, and in every case the courts concur that the means of accomplishing a general purpose, and all matters fairly and reasonably connected with it, are proper to be incorporated within the bill, and are germane to the title. The views of the appellants would require one act authorizing the water commissioners to conduct the water through villages, another authorizing them to contract with village trustees for a supply of water, and another authorizing the trustees to contract with them and levy a tax to pay the expense; thus requiring three independent acts to accomplish an incidental detail of a general subject. This constitutional clause does not, I am persuaded, involve any such circumlocution.

But there is another answer to this objection as affecting this case. If the village clause should be construed as another subject it would be invalid, but would not affect other parts of the law in no way connected with it, the subject of which is properly expressed in the title. These actions depend upon the validity of those provisions providing for the appointment of commissioners of public works, and defining and regulating their powers, and which constitute the principal part of the act. The village clause is contained in some amendments to another act in relation to supplying the city with water, and has no connection with and is in no way dependent upon those provisions relating to public works. The Constitution declares that every such bill shall contain but one subject, to be expressed in the title, but does not expressly or by fair intendment declare that provisions, the subject of which is expressed, shall be void. That the valid part should be upheld is not only in accordance with elementary principles, but is sustained by authority. It is a universal rule that

where a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void, unless the provisions are so connected together in subject-matter, meaning or purpose, that it cannot be presumed the legislature would have passed the one without the other. (*Gordon* v. *Cornes*, 47 N. Y., 608.) And this rule applies as well where the forms observed are sufficient for some of the purposes of the act, and not for others; as where a part of the act is constitutionally invalid for any other reason. (Cooley's Con. L., 176.) In *Fishkill* v. *Plank-road Co.* (22 Barb., 642) this point was expressly decided in an opinion by Emmott, J. In *People* v. *O'Brien* (38 N. Y., 193) this court decided that the particular section only containing the obnoxious provision was void. In *Davis* v. *The State*, 7 Md., 151, the court said: "In such a case the irrelevant matter would be rejected, while the principal subject of the law would be supported if properly described in the title."

Judge Cooley, in his recent valuable work on Constitutional Limitations, in treating upon this subject, says: "But if the act is broader than the title, it may happen that one part of it can stand, because indicated by the title while as to the object not indicated by the title, it must fail. Some of the State Constitutions, it will be perceived, have declared that this shall be the rule; but the declaration was unnecessary, as the general rule, that so much of the act as is not in conflict with the Constitution must be sustained, would have required the same declaration by the courts. If by striking from the act all that relates to the object not indicated by the title, that which is left is complete in itself, sensible, capable of being executed, and wholly independent of that which is rejected, it must be sustained as constitutional. The principal questions in each case will therefore be, whether the act is in truth broader than the title, and if so, then whether the other objects in the act are so intimately connected with the one indicated by the title, that the portion of the act relating to them cannot be rejected and leave a complete and sensible enactment which shall be capable of being executed."

This clear and comprehensive rule was the result of a review of the several State Constitutions and judicial decisions on the subject, and its good sense commends itself to my judgment, and renders further argument unnecessary. I have been unable to find from examination of numerous authorities in this and other States a single decision, *dictum* or intimation to the contrary from any court or judge. It should be observed as confirmatory of the correctness of this construction, that it avoids the evils which the constitutional clause was designed to prevent as effectually as if the whole act should be declared void. No influence could be secured for the passage of an act, by the insertion of foreign matters, which could be of no practical importance, and there could be no inducement to insert such matters fraudulently, when they would be void and useless. On the other hand, great injury might be produced by a different construction. Important public and private rights, growing out of and dependent upon legitimate provisions of a local bill, fully described in its title, might be jeoparded or destroyed by the presence of a provision upon a matter not strictly relevant to the general subject. Whether such a provision should be inserted inadvertently or fraudulently, or from an erroneous construction of its nature, there would be neither reason nor justice in obliterating the whole act and destroying all rights and interests which had grown up or existed under it. Take for example an act to reorganize the government of the city of New York, which would involve all its varied governmental interests, executive, legislative and judicial, embracing extensive powers over life, liberty and property, as well as authorizing and regulating public obligations, duties, rights and responsibilities, the injury which might be inflicted upon the community and individuals by a judicial condemnation of the whole act because a single provision might be found in it possibly, after years of operation, not strictly germane to the general subject, cannot be calculated. If such a construction was demanded by the terms of the Constitution, it should be adopted by the courts, regardless of consequences, because

there are no evils equal in magnitude to those which may result from violations of the fundamental law. But the language of the constitutional clause does not require such a construction, and I think does not permit it, while the one here indicated will equally well prevent the evils at which the clause was aimed, and is far more promotive of public and private interests and more consonant with sound reason and all the analogies of the law. Whether the legislation embraced in this bill is conducive to the best interests of the people of the city is a question we have not considered and have no right to consider, but that it does not violate the Constitution so as to affect the title to office of the defendants we have no doubt. These views render it unnecessary to discuss the additional point involved in the second action.

The judgment in each action must be affirmed, with costs.

ALLEN and ANDREWS, JJ., concur. RAPALLO, J., concurs on last ground discussed in opinion. GROVER, PECKHAM and FOLGER, JJ., dissent.

Judgment affirmed.