# THE UTICA WATER-WORKS COMPANY, RESPONDENT, *v.* THE CITY OF UTICA, APPELLANT.

*Constitution, art. 3, sec. 16 — when a local act embraces but one subject — 1867, chap. 393, is constitutional — contract for supplying the city of Utica with water — construction of it — 1862, chap. 18, sec. 47, sub. 3; sec. 69 — Code of Civil Procedure, sec. 3245 — not applicable to costs on appeal — when an action and not a* mandamus *is the proper remedy of a creditor of a municipal corporation.*

Chapter 393 of 1867 is entitled, "An act to authorize the Utica Water-Works Company to increase its capital stock, and to contract with the common council of the city of Utica for a supply of water in said city, for the extinguishment of fires." The first section of the act authorized the common

council and the company to make a contract, and to fix and agree upon the sum to be paid annually for a supply of water, for the extinguishment of fires in said city. The second section of the act authorized the company to increase its capital stock, which had been fixed at $100,000 by the act incorporating it, (1848, chap. 154), to a sum not exceeding $200,000.

*Held,* That the act embraced but one subject, to wit, the giving of authority to the two corporate bodies therein named to enter into a contract for the purpose therein specified, and that this subject was expressed in the title as required by section 16 of article 3 of the Constitution; that the power to increase the capital stock of the company was given simply to enable it to raise such sums of money as might be necessary to enable it to fulfil its contract, and was a mere incident to the main subject.

By the terms of the contract, which was made on May 19, 1868, the obligation of the company to perform it was made dependent upon its ability, on or before November fifteenth following, to raise by a sale of new stock, or otherwise, such a sum of money as would enable it to perform the contract.

*Held,* that the power to insert such a condition was impliedly given by the provision of the act authorizing the company to increase its capital stock.

That even if the insertion of this condition were unauthorized, the contract was not thereby invalidated, as it had been performed, and the contract thereafter recognized as binding by both parties.

The contract provided that the city should pay the sum of $10,000 per annum for the supplying of water to a portion of the city shown on a map referred to, and one-half of the taxes paid by the company in excess of $1,000. That if the city should direct an extension of the pipes beyond the territory specified, it should pay, " in addition to the sum herein specified seven per cent upon the cost of said extension or new work." The city was also to furnish all hydrants which it might require for use in extinguishing fires, and pay for putting them in.

*Held,* that as the contract furnished a mode of computation by which the sum to be paid annually by the city could be determined, the price was fixed and agreed upon as required by the act.

That the provisions as to the supplying of the hydrants by the city was a proper one, especially as the common council was authorized by the charter (1862, chap. 18, § 47, sub. 3) to provide necessary apparatus and means for the prevention and extinguishment of fires.

That the contract did not violate the provisions of the sixty-ninth section of the charter prohibiting the common council from contracting a debt which should not be payable within the year in which it was contracted.

That the provision providing for the payment of one-half of the taxes paid by the company, in excess of $1,000, was not a remission of taxes but merely served to partially determine the price to be paid by the city for the water.

That the seven per cent upon the cost of such additional pipes as might be laid, in pursuance of the direction of the common council, was to be paid annually and not once for all.

That although the contract furnished a rule by which the amount of compensa-

tion could be ascertained, yet as proof must be taken to ascertain the amount of taxes paid, and other data to which the rule was to be applied, the plaintiff's remedy was by action and not by *mandamus.*

Section 3245 of the Code of Civil Procedure providing that costs cannot be awarded to the plaintiff in an action against a municipal corporation, in which the complaint demands judgment for a sum of money only, unless the claim has before the commencement of the action been presented for payment to the chief fiscal officer of the corporation, does not apply to the costs of an appeal.

APPEAL from a judgment rendered upon the decision of a justice of this court, after a trial by him at the Oneida Circuit, without a jury.

*S. J. Barrows* and *C. D. Adams,* for the appellant.

*Beardsley & Beardsley* and *F. Kernan,* for the respondent.

SMITH, P. J.:

This action was brought to recover certain sums of money claimed to be due upon a contract alleged to have been executed between the parties, whereby the plaintiff agreed to furnish water from its works to the defendant for a compensation in money, to be paid therefor as specified in the contract. The contract purported to have been made in pursuance of chapter 393 of the Laws of 1867, and the first position taken by the appellant's counsel is that the contract is void for the reason that the act referred to violates the provision of section 16 of the third article of the Constitution of this State, that no private or local bill shall embrace more than one subject, and that shall be expressed in its title. The title of the act is "An act to authorize the Utica Water-Works Company to increase its capital stock and to contract with the common council of the city of Utica for a supply of water in said city for the extinguishment of fires." The first section of the act authorizes the making of such contract, and the second section provides that the company may increase its capital stock to a sum not exceeding $200,000. By the act under which it was incorporated (Laws 1848, chap. 154), its capital was limited to $100,000. We think that the act dealt with but one main subject, to wit, the giving of authority to the two corporate bodies therein named to enter into a contract for the purpose specified in the title, and that the power given to the water-works company to increase its capital stock, was simply a mode provided to enable it to raise the

money that it might need to perform the contract that it might enter into with the city for the purpose aforesaid. And such was found to be the object of the provision by the trial judge. As that was a mere incident to the main subject, the act embraced but one subject within the meaning of the constitutional provision referred to, and that was expressed in its title. It has been held frequently that where the title of a local or private act expresses a general purpose or object, all matters fairly and reasonably connected with it, and all measures which will or may facilitate its accomplishment, are proper to be incorporated in the act, and are germane to its title. (*The People ex rel. City of Rochester* v. *Briggs*, 50 N. Y., 553, and cases there cited by CHURCH, Ch. J., pp. 563 to 565.)

Next it is contended that the contract is not authorized by the provisions of the act, and is *ultra vires*. The argument under this head is, that the act only authorized an unconditional contract on the part of the company to supply water for the extinguishment of fires, for a fixed annual sum to be determined by the contract itself, and that inasmuch as the agreement of the company to furnish water is conditioned upon its ability to raise the money by a day named to make the improvement ; the city is required to furnish hydrants in order to use the water ; and the price to be paid by the city is not fixed, but is fluctuating ; the contract is unauthorized.

The contract was made on the 19th of May, 1868. By its terms the obligation of the company to perform was made dependent upon its ability, on or before the fifteenth day of November thereafter, by a sale of new stock, or otherwise, to raise sufficient money to complete the works mentioned in the contract. That provision, instead of being unauthorized by the act, was impliedly warranted by the power given to the company to increase its stock for the obvious purpose of enabling it to perform its contract. And as the condition was in fact performed by the day named, and the contract was thereafter recognized as binding and was acted under by both parties, the present attitude of the parties towards each other is the same as if the condition in question had not been inserted in the contract.

The provision that the city was to furnish the hydrants which it might require for use in extinguishing fires, and pay for putting them in, was not a departure from the purpose of the act. It was

proper that the city should furnish hydrants, in order to have such as would fit and work properly with their hose and fire apparatus. By the charter of the city the council have general power to provide necessary "apparatus and means" for the prevention and extinguishment of fires. (Laws 1862, chap. 18, § 47, sub. 3.)

The provisions of the contract in respect to compensation were, that for furnishing water sufficient for the then settled part of the city shown on a map referred to in the contract, the company was to have $10,000 *per annum*, and one-half of its taxes paid in excess of $1,000 dollars, or if the works for supplying that amount of water should cost less than $125,000, the charge was to be seven per cent on the cost, in place of $10,000 *per annum*. And if the city should want a greater capacity for water, and should order an extension of pipes beyond the territory shown on the map, it was to pay seven per cent on the cost of such additional works. These provisions are explained by the fact that at the time of the passage of the law and the making of the contract, the water company had thirteen miles of water pipe laid in thickly settled streets of the city, and the built up territory of the city had so extended that in the judgment of the council ten miles more of pipes were then required for the protection of the city against fires. There was also a large area of territory within the city limits laid out into lots and streets, but not then settled or built up, and the contract was so drawn as to provide immediately for the settled part of the city which then needed protection, and also to provide for a future extension of pipes when it should be needed. The arrangement was a beneficial one for the city and was within the power conferred by the act. The contract furnished a mode of computation by which the sum to be paid annually by the city could be ascertained. *Id certum est, quod certum reddi potest.*

It is insisted by the appellant's counsel that the contract violates section 69 of the charter of the city of Utica, which provides that the council shall contract no debt on the part of the city, excepting as therein otherwise provided, which shall not be payable within the fiscal year in which it is contracted, and which cannot be discharged from the income of such year. The position is not tenable. Under the contract the compensation for each year's service of the company in furnishing water is to be paid for in that

year. It is true the obligation created by the contract is continuing — that is, the city will be obliged to pay annually for water furnished by the company so long as the company continues to furnish it and the city uses it, but the liability will not ripen into a debt, except from year to year, and each year's indebtedness will be only for the water furnished in that year. Besides, the act authorizing the city to contract being *in pari materia* with the charter, the two are to be read together, and the debt created by the contract, if obnoxious to the general provisions of section 69, is saved by the exceptions therein expressed.

The appellant's counsel contends that the city has no power to remit taxes to any person. The effect of the contract is not to relieve the company from the payment of taxes, in whole or in part at the expense of other taxpayers, but it is to adopt the amount of taxes paid by the company as a partial measure of compensation for the water supplied by it. It is an agreement by the city to pay to the company annually a sum equal to one-half the taxes paid by it over $1,000, in addition to the sum specified in the contract. It is not a remission of taxes, but simply a resort to the amount of taxes as a measure of compensation.

The appellant's counsel contends that the company is not entitled to seven per cent *annually* upon the cost of pipes extended beyond the territory designated on the map, but that one payment of seven per cent suffices. The contract on that subject is: " If said city shall determine to have said water pipes extended on any street beyond the point designated on said map, the said company agree to extend the same to such point as may be designated, the city agreeing to pay, in addition to the sum herein specified, seven per cent upon the cost of said extension or new work." The construction contended for cannot be maintained. The seven per cent is in addition to a sum specified in the contract, which is to be paid annually; in other words, the annual payment is to be increased by the addition of the seven *per cent*. It would be unreasonable to hold that the parties intended by the language employed that the extension was to be compensated for by the payment of only seven per cent of its cost. The parties have practically construed the contract to mean seven per cent annually, the city having paid

seven per cent upon the cost of the extension every year since its completion in 1868 till 1882.

The point is made that the plaintiff's remedy is by *mandamus*, and not by action. We think an action is the proper remedy. Although the contract has furnished a rule by which the amount of compensation can be ascertained, yet the taking of proof is necessary to establish the amount of taxes paid by the plaintiff and other *data* to which the rule is to be applied, and for that purpose an action is the appropriate remedy. If, after the amount is settled by judgment, no property of the defendant can be found liable to execution, it may be that the plaintiff can resort to a *mandamus* to compel the raising of money by tax to satisfy the judgment. But those considerations do not stand in the way of the present remedy by action.

The trial judge having found that the claim upon which the action is founded was not, before the commencement of the action, presented for payment to the chief fiscal officer of the city, costs were refused to the plaintiff, pursuant to section 3245 of the Code. We do not understand that section to apply to the costs of an appeal, and we think the respondent is entitled to costs under subdivision 4 of section 3251.

The judgment is affirmed.

HARDIN and BARKER, JJ., concurred.

Judgment affirmed.