Bumsted v. Govern.

STATE, EX REL. ROBERT BUMSTED, v. PATRICK GOVERN.

1. Where a statute is general in its terms, and its sole effect is to remove in some degree the differences existing in the various regulations of internal affairs of towns or counties, and to subject those affairs to the operation of a general law, then the statute is not special or local in the constitutional sense, although the pre-existing legal conditions were such that it would effect a change in only one town or county.

2. The constitutional requirement that the object of every law shall be expressed in its title, is satisfied when the title fairly indicates the general object of the statute, although it does not indicate the means or method of attaining that object.

3. The object expressed in the title of an act was " to make uniform the selection and duties of directors of the boards of chosen freeholders of the state." The aim of the act was to abolish the peculiarities touching the selection and duties of director, which existed in Hudson county alone, and to subject the selection and duties of the director in that county to the general law governing the rest of the state. *Held,* that the title sufficiently expressed the object of the law.

On demurrer to an information in the nature of *quo warranto.*

The following is the information filed by the relator :

Hudson county, *ss.*—John P. Stockton, esquire, attorney-general of the State of New Jersey, who sues for the said state in this behalf, comes in his own proper person here into the Supreme Court of Judicature of the said state, before the justices thereof, at the state-house, in the city of Trenton, on the 8th day of June, in the year of our Lord 1885, for the said State of New Jersey, at the relation of Robert Bumsted, of Jersey City, in the county of Hudson in said state, desiring to sue and prosecute in this behalf, according to the form of the statute in such case made and provided, gives the said court here to be informed and understand that he is a citizen of the United States and of this state, and a resident, freeholder and taxpayer of that part of the city of Jersey City within the first assembly district of said county of Hudson,

and has been such for five years last past, and upwards, and that on the 14th day of April last past, he was duly elected a member of the board of chosen freeholders for said county, for said district, for one year from the first Tuesday in May then next, and that he duly qualified for said office, and gave the bond required by law; that it is by law the duty of said board to hold its annual stated meeting on the Tuesday next after the first Monday in May of each year; that on the said Tuesday in May last the freeholders elect from the various assembly districts of said county, being two from each district, or twenty in all, having all duly qualified and given bond, assembled at the usual place of meeting of said board for the purpose of organization; that at that time and place one Patrick Govern assumed the chair, and called the roll of members elect, and proceeded to the transaction of business, with himself as presiding officer, and has ever since professed to act as a member and director of said board.

And the said attorney-general, on the relation aforesaid, further gives the court here to be informed and understand that, although true it is that by virtue of an act of the legislature of the State of New Jersey entitled "An act to re-organize the board of chosen freeholders of the county of Hudson," approved March 23d, 1875, the said Patrick Govern was on the first Tuesday of November, A. D. 1883, duly elected director of the board of chosen freeholders of the county of Hudson by the vote of the electors of said county at large, for a term of two years from the third Tuesday of November then next, and accepted said office, and took the official oath, and gave the bond required by said act, and on the third Tuesday of November, A. D. 1883, entered upon the duties of his said office, and continued to exercise the same until the passage of the act of the legislature hereinafter mentioned, and thence hitherto claims and alleges that said last-named act is unconstitutional and void, and that he is acting as member and director of said board under authority of said act approved March 23d, 1875, yet the said attorney-general, on relation aforesaid, gives the court here further to be informed and

understand that, by an act of the legislature of the State of New Jersey, passed March 25th, A. D. 1885, entitled

" An act concerning the constitution of the boards of chosen freeholders of this state, and to make uniform the selection and duties of directors of such boards," it was enacted as follows, viz. :

1. Be it enacted by the Senate and General Assembly of the State of New Jersey, That hereafter only those persons elected by the various townships, or other political divisions from which chosen freeholders are authorized to be elected by the laws of this state shall constitute the boards of chosen freeholders of the respective counties of this state ; and no member or director of any board of chosen freeholders shall be elected by the vote of the electors of a county at large, any law to the contrary hereof notwithstanding.

2. And be it enacted, That the boards of chosen freeholders in the several counties of this state shall elect their own director from among their own number, in accordance with the provisions of the act entitled " An act to incorporate the chosen freeholders in the respective counties of the state," approved March 16th, 1846 ; and such director shall have the powers and perform the duties prescribed by said act, and no other powers and duties.

3. And be it enacted, That any office of director of a board of chosen freeholders created by any law of this state other than said act shall be and the same is hereby abolished, and in any county where there has hitherto been such an office the board of chosen freeholders shall immediately elect a director from their own number.

4. And be it enacted, That all acts and parts of acts, general or special, public or private, inconsistent with the provisions of this act, be and the same hereby are repealed.

5. And be it enacted, That this act shall be deemed a public act and take effect immediately.

Wherefore the said attorney-general, on the relation aforesaid, says that the said Patrick Govern, since the fifth day of

Bumsted v. Govern.

May last, hath usurped, intruded into and unlawfully held, used and exercised, and yet doth use, intrude into and unlawfully hold, use and exercise the office of member and director of the board of chosen freeholders of the county of Hudson, to the great disadvantage of the said relator as a member of said board, and as a citizen and tax-payer of said county, to wit, at Jersey City, Hudson county aforesaid, in contempt of the State of New Jersey, and to its great damage and prejudice, against its dignity and sovereignty.

Whereupon the said attorney-general of the said state, at the relation of the said Robert Bumsted, desiring to sue and prosecute in this behalf, prays the advice of the court here in the premises, and for due process of law against the said Patrick Govern, in this behalf, to be made to answer to the said state by what warrant he claims to hold, use, execute and enjoy the aforesaid office of member and director of said board of chosen freeholders of the county of Hudson, and the liberties, privileges and franchises thereof.

JOHN P. STOCKTON,
*Attorney-General.*

R. B. SEYMOUR,
*Attorney of Relator.*

At request of defendant's attorney it was stipulated by paper duly filed, that above information be considered amended so as to contain admissions :

1. That Hudson county is the only county in the state which, on March 25th, 1885, had a director-at-large, or a director or member elected by the vote of the electors of the county at large, and the only county electing chosen freeholders from assembly districts.

2. That no notice of intention to apply for the act of March 25th, 1885, was given.

Defendant filed a general demurrer, and relator filed the common joinder.

Argued at June Term, 1885, before BEASLEY, CHIEF JUSTICE. and Justices DIXON and MAGIE.

For the relator, *G. Collins.*

For the demurrant, *A. L. McDermott.*

DIXON, J. The demurrant takes two positions ; first, that the act of March 25th, 1885, (*Pamph. L., p.* 137,) is special or local, and is therefore unconstitutional, both because it attempts to regulate the internal affairs of counties, and because no public notice was given of the intention to apply to the legislature therefor ; and second, that its title does not express its object, and therefore also it is unconstitutional.

1. Is this act special or local ?

Nothing of a special or local character appears on the face of· the law. Its terms embrace the whole state and every board and officer in the classes to which it relates. But it seems that before its passage the legal conditions were such that no board or officer outside of the county of Hudson would be affected by it; all other boards of chosen freeholders were constituted, and the selection and duties of all other directors of such boards were regulated, in accordance with its provisions ; its sole effect would be to put the office of director in Hudson county on the same footing as such directors elsewhere. While, therefore, if valid, its object and effect are to produce uniformity throughout the state, its operation is local, because only in one locality was there before any divergence from the normal ·type which the act makes universal.

This, however, does not render the statute special or local within the constitutional prohibition. It should, I think, now be regarded as settled that whenever an act of the legislature is general in its terms, and its only effect is to remove in some degree the differences existing in the various regulations of the internal affairs of towns or counties, and to subject those internal affairs to the operation of a general law, then the act is not prohibited by the constitution, but is in strict accordance with the command of that instrument, which expressly enjoins upon the legislature the passage of general laws for such cases. This principle has been approved in *Van*

*Riper* v. *Parsons*, 11 *Vroom* 123 ; *Sutterly* v. *Camden Common Pleas*, 12 *Vroom* 495 ; *Tiger* v. *Morris Common Pleas*, 13 *Vroom* 631 ; *Field* v. *Silo*, 15 *Vroom* 355 ; *Hines* v. *Freeholders of Essex County*, 16 *Vroom* 504.

The statute cannot be defeated on this ground.

2. Does the title express the object of the act?

The constitutional provision is that " every law shall embrace but one object, and that shall be expressed in the title."

It is not necessary to review the numerous decisions involving the application of this and similar clauses. It is on all hands agreed that its purpose is to require the title of a bill to be such as will inform the public and the members of the legislature of the object of the enactment, and that this purpose is accomplished when the title fairly indicates the general object, although it does not indicate the means or method of attaining this object. *Grover* v. *Ocean Grove*, 16 *Vroom* 399 ; *People* v. *Briggs*, 50 *N. Y.* 553 ; *Cooley on Const. Lim.* 144.

In considering whether the title of an act meets this requirement, it must be presupposed that the legislature and the public are cognizant of the public laws touching the subject on which the intended statute is to operate. In the present case it must be presumed to have been known that in every county of the state except Hudson the director of the board of chosen freeholders was selected by the board from its own members, and that his duties were those specified in the general law entitled " An act to incorporate the chosen freeholders in the respective counties of the state," approved March 16th, 1846 ; that in Hudson county the director was chosen by the voters at large, and that his duties were those specified in the local act of March 23d, 1875. In this condition of things the title now under review declares that the object of the law is " to make uniform the selection and duties of directors " of boards of chosen freeholders of the state. The law itself discloses that its exact aim was to abolish the peculiarities touching the selection and duties of director which existed in Hudson county alone.

The question then is whether this title was fairly adapted to apprise the public and the members of the legislature of the general object of the law. I think it clearly was. It did not declare a purpose to legislate concerning all the directors in the state or concerning more than one of them, but it asserted that the object of the legislation was to produce uniformity among them all with regard to their selection and duties. It did not say whether that object was to be accomplished by placing all directors on the footing on which the director in Hudson county stood, or by reducing him to the level of the rest, or by conforming all directors to some new scheme, but it did distinctly give notice that by some means uniformity in these respects was to be secured. That was the general object of the act, and that alone was necessary to be expressed in the title. For the particular method of reaching the end every one was legally bound to examine the body of the statute.

I do not see how the general object of the law could have been more aptly expressed. It may be said that it would have been done by entitling it, for example, "An act to abolish the office of director of the board of chosen freeholders in Hudson county as it now exists, and to ordain that such office shall hereafter exist only under the act to incorporate the chosen freeholders in the respective counties of the state, approved March 16th, 1846." Such a title would indeed have indicated more definitely the means by which the design of the legislature was to be carried out, but it would not have expressed more clearly the general object in view. If so specific a title be requisite, it can only be because of some such rule as this, that whenever the object of a statute is to remove a special characteristic in any municipal government so as to bring the government into conformity with a general law, the title of the act must expressly point out that characteristic. Such a rule would be impracticable. It would utterly prevent any general law for the government of towns in this state, and would, I think, defeat every law heretofore passed having this design. At the time our constitutional

amendments were adopted, every city in the state was governed under a special charter, and these charters differed from each other in a multitude of particulars. Any general law framed for the government of these bodies would, therefore, necessarily abolish some peculiarities confined to single cities, some limited to a few, and some, perhaps, common to many. To require the enumeration of these special features in the title, or even in the body of a law, would, of course, be absurd. Yet if such a feature must be specified when it exists in only one town or county, why need it not be when it exists in two or in several? And if it exists in several municipalities, and in the attempt to enumerate all the instances the legislature should omit one, the result would be that the act would wholly fail, because not embracing all the individuals properly standing in one class on the subject matter of the statute. I do not think such a rule can be adopted. The proper form of legislation is for the legislature to declare what shall be the law prevailing everywhere, and inconsistent special provisions, wherever found, must give way, and the appropriate form of title for such legislation is one that expresses a purpose to enact a uniform rule on the subject to which the law relates. This is the mould in which the present act and its title were cast.

The statute being thus, in my judgment, constitutional with regard to its main design of securing uniformity in all things pertaining to the office of directors of boards of chosen freeholders, and with regard to the form for accomplishing that design, it is also valid in reference to its immediate abolition of the office of the demurrant. Such abolition was a necessary incident of the legislative purpose of putting Hudson county at once on the same basis as the rest of the state, and was therefore embraced within the object expressed by the title. *Payne* v. *Mabon*, 15 *Vroom* 213. The demurrant had no right to his office which could withstand the enactment of the legislature to remove him. *City of Hoboken* v. *Gear*, 3 *Dutcher* 265.

The attorney-general is entitled to judgment.

MAGIE, J., concurred.

BEASLEY, CHIEF JUSTICE, (dissenting.) My consideration of this case has led me to a different result from that reached by my associates. The statute in question seems to me to be in two respects in conflict with the constitution of the state.

The pertinent constitutional provision is to this effect: "The legislature shall not pass private, local or special laws * * * regulating the internal affairs of towns and counties." The office of the act under consideration is to change the mode of electing one of the chosen freeholders of the county of Hudson. It is a law that undeniably is operative on a single office, in one county only, and it regulates the internal affairs of that county. In my apprehension, therefore, it is not practicable to suggest any case that falls more clearly under the prohibition of the constitutional clause just quoted.

The theory by which this manifest conflict was sought to be subdued, was constructed in the briefs of counsel on this basis: First, it was insisted that the act in question, by its modification of the mode of electing one of the chosen freeholders of this county, harmonized, to the extent of the change thus effected, the method of electing these official bodies throughout the state, the supposition being that it was the purpose of this provision of the constitution to compel, as far as practicable, such harmony. But it is conceived that there is no force whatever in such a consideration, for the conclusive answer is that the argument, when analyzed, is a mere request that the court shall alter the constitution of the state. That instrument, in plainest language, declares that a local law of this character shall not be enacted. We are asked to say that such law may be passed if it has a certain beneficial effect, in other words an unqualified prohibition is to have a qualification injected into it. If this act is to be withdrawn from the constitutional inhibition for the reason that, although its immediate effect is spent in a single county, its general effect is to pro-

duce agreement in the methods of electing freeholders throughout the state, why are not all laws having a local force only, but being in general promotive of the public welfare, to stand on the same plane? Are all these sorts of acts to be deemed constitutional, or are we to discriminate? And if we are to discriminate, wherefore? Whether as, heretofore, one of the board of freeholders of the county of Hudson shall be elected, contrary to the practice in vogue throughout the rest of the state, by the voters of the county at large, is a matter, it must be admitted, in which the citizens of the state in general have practically no interest whatever. It may, it is true, to some inappreciable degree, gratify the æsthetic taste of an inhabitant of the county of Mercer to be aware that, by the abolition attempted by this act, the general system regulating the election of chosen freeholders has been made harmonious and symmetrical, but such abolition can afford him no other pleasure, for it cannot, in the remotest manner, affect even the least of his own legal privileges.

It is obvious that a local law authorizing the construction of a public road, or the erection of a jail, in the county of Hudson, would be enterprises of much more practical concern to the citizens of the state at large than the scheme of the present act can be claimed to be, for the use of such road would belong to them of right, and such jail would benefit them individually in its tendency to repress crime. Are such laws as these to be pronounced to be invalid, and the present one, that so slightly affects the general welfare, to be sustained? The only reason that has been suggested why such a distinction should be made, is, that the purpose of the constitutional prohibition is to produce similarity between the institutions by which the different counties and municipalities are governed. But this is a mere assumption; the constitution does not say so; nor is there anything in its various provisions from which such an intent can be collected. That a general law placing on the same footing all the different political districts of the state, and subjecting them to the same species of local government, would be productive of

public good, may be readily granted, but there is no reason to believe that this was the sole, or even the most important end to be attained by the clause under consideration. Indeed, if speculation on this subject were legitimate for the purpose of construing the clause, it might well be urged that the prime motive of its introduction into the organic law must have been the prevention of legislation for localities by the votes of legislators who were not liable to be called to account for their conduct by the inhabitants of such localities. A disastrous experience had manifested that the most ruinous laws, operative only in a particular city or a single county, had been easily obtainable at the instance of interested persons, when it was evident that such laws would not have been enacted if the burthen of them would have fallen on the citizens of the state at large. My inference is that this irresponsibility of the law-makers for local legislation was the flagrant evil of which the prohibitory provision in question is the provided remedy. But it is conceived that all such disquisitions as these are out of place when introduced into the present inquiry, for when the language of a constitutional clause is entirely intelligible, is not controlled or affected by its context, and its application to its subject is practicable, the only course permissible is for a court to enforce it according to its terms. This is the established rule of construction, and is the only one which, if the dictates of reason are to control, can be adopted, for, under the conditions defined, the language of the instrument affords us our only means of ascertaining the purpose of the legislature that framed and sanctioned its provisions, or of the people who by their votes called them into activity. In the present case, therefore, my inquiry seems to me to be limited to the question whether this statute is a local act of the kind described, for if so the law is in very words prohibited, and such prohibition does not depend on the question whether such local act abolishes an anomaly subsisting in the governmental institutions of the locality, for as the respective boards of freeholders are independent of each other, the

abolition thus effected can have no force outside of such locality.

And in my apprehension, so far as relates to the *rationes decidendi*, the judgment in the case of *Freeholders of Passaic* v. *Stevenson*, 17 *Vroom* 173, is in point. The law there passed upon made provision for the payment of salaries, of different amounts, to the prosecutors of the pleas of certain designated counties; and the question was whether such law did not violate the constitutional clause we are now considering. One of my associates, who is now sitting with me, on that occasion contended, with his usual ability, that such law did not regulate the internal affairs of the designated counties alone, and therefore was not a local law in the constitutional sense, the reason assigned being that the prosecutors of the pleas are officers whose duty it is to enforce the general criminal laws of the state, and that the " repression of crime in each county concerns the state at large." It cannot fail to be observed how much more favorable to this contention the circumstances of the reported case were than are the facts of the present case, for the enforcement of the general criminal laws is assuredly of much interest to the entire commonwealth, whereas, as has been said, the assimilation of the mode of choosing a member of a board of freeholders in one county to that practiced in the others, cannot be a concern of any moment to the citizens of the state in general. But the argument, although at its best with respect to its basis of fact, was not successful, and the statute was vacated. The statute in that instance spent its direct force within certain designated localities, and it was on that ground pronounced against, although, like almost all other good local laws, its ultimate effect was to promote the general public welfare. According to my apprehension, the present case, in point of principle, is ruled by this adjudication.

Again, it is further urged on this same head, that this act, in its title and in all its provisions, applies in its terms to the whole state and not to any particular locality. But unless words are things, such a feature of the law is an absolute nul-

lity.   If a statute be in point of operation local it cannot be
converted into a general law by a mere sleight of the pen.
Nor can a purely verbal ubiquity tend in the least degree to
impart to it such a nature.   If the present statute affects but a
single county by altering the mode of the election of one of the
members of its board of chosen freeholders, and if such modi-
fication simply assimilates the internal organization of this
particular board to the organization of the independent boards
of the other counties, and  thus produces, as an ultimate result,
mere likeness of structure between these bodies without any
pretence of producing any harmony of administration between
such bodies ; if a law has this effect and no other, it would
seem to be undeniable that such an act is to be deemed either
special or general in view of such effect, and not in view of its
phraseology.   If the act had explicitly declared its purpose to
be to produce a definite effect in this particular county, would
it not have been as valid as it is now ?   Language as applied
to such a subject is a matter of literature and not of law.   If
the object immediately effected by a statute be of general prac-
tical interest, then in the aspect under observation the act is
general, and no terms of expression or set of words can make
it local, and so the same test stamps an act as local when its
immediate purpose is local.   It is conceived that this view is
not impugned by the decision of this court in the case of
*Van Riper* v. *Parsons*, 11 *Vroom* 123, although it is plain
that it stands in conflict with the *dicta* in the opinion.   The
question in that case related to an attempted amendment of the
proceedings, which was a motion addressed to the discretion of
the court; if such amendment had been permitted, then the
present question could have been presented for judgment;
but the application was refused, and consequently such ques-
tion was not brought, with directness, under consideration.
The result reached by the court seems to me, as the facts were
exhibited, to have been proper on grounds of public policy.

    In fine, the act under criticism appears to me to be uncon-
stitutional on the grounds above assigned.

    The second particular in which this act, as it is deemed,

Bumsted v. Govern.

does not comport with the requirements of the constitution of the state, is this, its object is not expressed in its title. The mandate of the primary law on this subject is, that "every law shall embrace but one object, and that shall be expressed in its title." The title of the statute under consideration is in these words: "An act concerning the constitution of the boards of chosen freeholders of this state, and to make uniform the selection and duties of directors of such boards."

This title as it seems to me is composed of two false statements and one half-truth. The act does not concern "the constitution of the boards of freeholders of the state," but it relates only to the constitution of the board of a single county. Nor does it make uniform, in any sense whatever, the duties of the directors of such boards, for although there is a section on that subject, it leaves the matter as it previously existed, the section being a mere pretence and totally without effect. The half truth expressed is this—this title says the act is to make uniform the selection of the directors of these boards throughout the state. The truth is that its immediate purpose and effect is to alter the way in which one of such directors in a single county was selected, and the result of that alteration was uniformity in that respect. Why a title thus general, thus false, thus inexpressive? The answer seems at hand; it was an attempt to transmute by force of mere terminology a special, local act into a general law. It were easy to have styled this law "An act concerning the mode of electing the director of the board of chosen freeholders of the county of Hudson," or even "An act concerning the board of freeholders of the county of Hudson." But in the place of these or some such definite title, we have the elusive generalities just stated. In my judgment this requirement of the constitution means that the object of the law shall be expressed in its title in a manner reasonably intelligible, and such requirement is not fulfilled by expressing the object in the form of a legal enigma, which can be solved only by some legal practitioner versed to an extraordinary degree in the minutest details of local and municipal laws. No reasonable

expression of the object of the present law is, in my opinion, to be found in its title; it is worse than being inexpressive—it is deceptive.

In order to avoid misconception, it is proper to say that it is not intended by any part of the foregoing remarks to intimate that the anomaly that existed in the method of choosing the director of the board of chosen freeholders in question could not have been abolished by appropriate legislation. All that is insisted on is, that such an end cannot be reached by a general law, as the subject is one of purely local concern. When the case of *Van Riper* v. *Parsons*, 11 *Vroom* 1, was originally before this court, an opinion was expressed that special local legislation regulating the affairs of towns and counties was constitutionally prohibited only when the end designed to be attained could be effected by general legislation, and that when the latter method was not available, the former method was not illegitimate. This proposition has not as yet received judicial sanction; and whether the evil, if such it be at which this present act is aimed, as well as others existing under similar conditions, may not be abolished by resort to this method, is worthy of consideration. That local laws whenever they can be legally enacted must be resorted to is abundantly evident from the constitution itself. By ¶ 9 of § 7 of art. IV., it is declared that "no private, special or local bill shall be passed, unless public notice of the intention to apply therefor, and of the general object thereof, shall have been previously given."

This is a requirement in which each separate community of the state has an abiding interest, and it confers a right which courts cannot abrogate; and yet if the present act is sustained it is not perceived how it can be contended that such disfranchisement has not been inflicted in this instance. If the citizens of a county have not the right under the force of the constitutional section just quoted, to be notified of an intention to apply for a law altering the mode of choosing one of their own board of freeholders, to what local interest is the provision applicable? Would it be obligatory when the purpose was to

Dugan v. Farrier.

regulate the election of the mayor or common councilmen of a city? To me it seems plain that the residents of Hudson county have been deprived by the enactment of this law in its present form, of one of the privileges guaranteed to them by the constitution of this state; and such result will oftentimes obtain if that theory is to be adopted which, on subtle grounds and unchecked by the plain language of the constitution, transmutes local interests into general interests, and then seeks to justify the use, with regard to them, of general in the place of local acts.

From the foregoing considerations I am constrained to dissent from the decision rendered in this case.