DETERMINED IN THE

# FOURTH DEPARTMENT

AT

# GENERAL TERM,

## July, 1890.

ROZELLEN ALDINGER, Respondent, v. EMERY S. PUGH, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK EX REL. ROZELLEN ALDINGER, Respondent, v. STEPHEN J. PUGH, Appellant.

*The special surrogate of Oneida county has the powers of a county judge out of court — chapter 306 of 1849 and chapter 108 of 1851 were not superseded by the Code of Civil Procedure — violation of an injunction order by a party not served therewith — effect of his restoring the amount of his loss to the party injured.*

The special surrogate of Oneida county, under the provisions of chapter 306 of the Laws of 1849, as amended by chapter 108 of the Laws of 1851, providing that he "shall possess all the powers and perform the duties which are possessed and can be performed by a county judge out of court," is authorized to grant an injunction order in a case in which a county judge has authority to grant such order.

The acts of 1849 and 1851 were not repealed, by implication, by the adoption of the Code of Civil Procedure, as the two are not so repugnant to or inconsistent with each other as that they cannot be harmonized, nor does the Code of Civil Procedure show that it was clearly intended thereby to supersede the former statutes.

Statutes which are special and local in their application will not ordinarily be repealed by general statutes unless expressly referred to.

A party who, with full knowledge that an injunction order has been granted, and

of its contents and service upon a co-defendant, violates the direction thereof while acting as the agent, servant or assistant of such defendant so served, is guilty of a contempt of court.

The fact that a party who has violated an injunction order, subsequently becoming alarmed, saves the party obtaining such order from the loss attendant upon its violation, does not relieve him from liability for its violation.

APPEAL by the defendants in each of the above-entitled actions from an order, except the last paragraph thereof, made at the Oneida Special Term of the Supreme Court, convicting them of a contempt of court in violating its injunction order, which order was entered in the office of the clerk of the county of Herkimer on the 13th day of September, 1889, with notice of an intention to bring up for review the injunction order, and also the order of reference to one Charles G. Irish.

On the 7th day of December, 1888, an injunction was granted by the special surrogate of Oneida county in an action in the Supreme Court, in which Rozellen Aldinger was plaintiff and Emery S. Pugh was defendant, by which the defendant, his agents, assistants and assignees were enjoined from selling, disposing of or drawing away any of the hay on a certain farm owned by the plaintiff and occupied by the defendant, in that action during the pendency thereof or until the further order of the court. This injunction was served upon Emery S. Pugh on the day it was granted.

On the twenty-second and twenty-fourth days of the same month, and while the injunction was in full force, Stephen J. Pugh, the father of the defendant, removed from said farm about eleven tons of the hay thereon which was referred to in said injunction. The injunction was not served upon Stephen J. Pugh until December twenty-fourth, but he knew of the service of it on the defendant and the contents thereof. The defendant Emery S. Pugh was aware of the removal of such hay, but did nothing to prevent it.

On December 31, 1888, an order requiring the said Emery S. Pugh and Stephen J. Pugh to show cause at a Special Term of the Supreme Court to be held at the court-house in the city of Utica on the 8th day of January, 1889, why they should not be punished for contempt in knowingly violating such injunction, was duly granted by Hon. MILTON H. MERWIN, one of the justices of this court, and served on the appellants.

On the 8th day of January, 1889, the parties appeared, and the court, upon reading and filing the order to show cause, the affidavits presented in support of such application and affidavits produced in opposition thereto, and after hearing counsel for the plaintiff and counsel for the defendant and Stephen J. Pugh, made an order appointing a referee to take the evidence of the parties to that proceeding, and of their witnesses, as to whether the defendant Emery S. Pugh and Stephen J. Pugh had violated such injunction, and if so, whether such violation was wilful, and whether the said Stephen J. Pugh aided or abetted the defendant Emery S. Pugh in violating the same, and if so, whether such violation defeated, impeded or prejudiced the plaintiff's rights, and to what extent, and directed him to report the facts and return the testimony, with his opinion thereon, to the court.

The referee thus appointed duly proceeded to execute such reference and take the evidence of the parties and their witnesses, and reported the same to the court with the facts found and with his opinion thereon.

The referee, among other things, found : " That on December 22d and 24th, 1888, the said Stephen J. Pugh drew away from said leased premises eleven tons of hay of the value of $132, and that defendant was aware of such removal and did nothing to prevent it; that by such removal on December 22d and 24th, 1888, defendant and S. J. Pugh, and each of them, knowingly and willfully violated said injunction order — the defendant in permitting the said Stephen J. Pugh to remove said hay, and the said S. J. Pugh in aiding and abetting and assisting the defendant to remove, draw away and dispose of the hay referred to in and restrained by said injunction order ; and, further, in refusing to return the two tons of said hay removed by him on December, 24, 1888. * * * At the time of the service of the injunction order, and also on December 22d and 24th, 1888, the plaintiff was damaged by the failure on defendant's part to draw back manure equivalent in amount to the hay and straw then drawn away. This damage has since been remedied by defendants drawing manure on the place from December 15, 1888, and through February and March, 1889, and, inasmuch as the defendant before the expiration of such lease fully complied with all its provisions, except keeping the ten cows, and

drew back upon said premises an amount of manure equivalent to the hay and straw drawn away by him, the object of this action is substantially defeated, and the plaintiff cannot be said to have suffered any damages from the breach of any covenant in the lease or by removal of the hay."

Upon all the proceedings had in this matter, the testimony taken before the referee, his report, opinion and the affidavit of Henry F. Coupe as to the plaintiff's costs and expenses incurred in such proceeding, the matter came on for hearing at a Special Term of this court, held at the court-house in the city of Utica, June 15, 1889, when, after hearing counsel for the plaintiff and counsel for the defendants Emery S. Pugh and Stephen J. Pugh, it was by the court adjudged and determined "that the defendants Emery S. Pugh and Stephen J. Pugh are guilty of contempt in having knowingly and willfully disobeyed the said injunction order granted in said action — the said Emery S. Pugh in causing and permitting eleven of the tons of the hay mentioned in and restrained by said injunction, of the value of $132, to be removed, drawn away and disposed of while said injunction order was in force, to wit: On the 22d and 24th days of December, 1888; the said Stephen J. Pugh in having, with full knowledge of said injunction order, of its contents, and of the service of it on the said defendant, while acting as the agent, servant and assistant of the said defendant, aided and abetted and assisted the said defendant, Emery S. Pugh, in said removing, drawing away and disposal of said eleven tons of hay on the said 22d and 24th days of December, 1888.; and that said violation of said injunction order was calculated to and actually did defeat, impede, impair and prejudice the rights and remedies of the plaintiff in said action. It is further considered and adjudged and ordered that the said Emery S. Pugh and Stephen J. Pugh pay a fine of $100 referee's fees, seventeen dollars witness fees, fifty dollars counsel fees and ten dollars costs of this motion, in all the sum of $177, to be paid to the plaintiff herein, said Rozellen Aldinger, to satisfy her costs and expenses in the premises, and that they stand committed to the common jail of Oneida county until said fine be paid."

From this order and determination of the Special Term the defendants Emery S. Pugh and Stephen J. Pugh appealed. It is also stated in the notice of appeal that the "appellants intend to

bring up for review the injunction order granted herein and the order of reference to Charles G. Irish."

*Edward Lewis*, for the appellants.

*Henry F. & James Coupe*, for the respondent.

MARTIN, J.:

As no motion was made to set aside or vacate the injunction order granted herein, the appellants are not in a position to review that order on this appeal. Their remedy was by an application under article 3, title 2, chapter 7 of the Code of Civil Procedure, and not by appeal. (Code of Civil Pro., § 772.) An appeal from an order granting a provisional remedy can only be taken when made upon notice. (Code of Civ. Pro., § 1347.) No appeal lies from an order granted *ex parte*. (*People ex rel. Schler* v. *Common Council*, 30 Hun, 636; *Matter of Johnson*, 27 id., 538.)

We find no ground for disturbing the order of reference. The Code of Civil Procedure provides that upon the return of an order to show cause in proceedings for contempt, the questions which arise must be determined as upon any other motion. (Sec. 2283.) The court may of its own motion direct a reference to determine and report upon a question of fact arising upon a motion. (Code of Civil Pro., § 1015; *People ex rel. Alexander* v. *Alexander*, 3 Hun, 211.)

The Special Term was fully justified by the evidence taken in this proceeding in finding that the appellants knowingly and willfully disobeyed the injunction and in adjudging them guilty of contempt, if the officer granting such injunction was authorized by law to grant it.

The appellants contend that the special surrogate of Oneida county had no power or authority to grant an injunction in such an action. If such authority existed, it was under and by virtue of the provisions of chapter 306, Laws of 1849, as amended by chapter 108, Laws 1851, which provides:

§ 1. "There shall be elected in the counties of Jefferson, Oneida, St. Lawrence, Oswego, Orange, Chautauqua, Cayuga and Tioga at the next general election, and as often thereafter at any succeeding general election, as may be necessary, in the same manner as other

county officers are elected, a local officer or two local officers, to discharge the duties of county judge and surrogate in their respective counties, in cases of vacancy or inability of such officers, or either of them, in pursuance of section fifteen of article six of the Constitution; when the duties of county judge and surrogate shall be discharged by the same person, there shall be elected, as aforesaid, one local officer, and in such of the said counties where the office of county judge and surrogate shall be separate there shall be elected, as aforesaid, two local officers, and the term of office of the persons so elected shall commence on the first day of January next after their election; they shall hold their offices for three years and until others are chosen in their places and duly qualified, and shall be subject to removal in the same manner and for the same causes as county judges and surrogates are subject to be removed."

§ 2. " Such local officers, so elected to discharge the duties of county judge (or of county judge and surrogate in those counties where there is no separate officer to discharge the duties of surrogate), shall be designated as special county judge, and such local officers, so elected to discharge the duties of surrogate in those counties where there shall be a separate officer to discharge the duties of surrogate, shall be designated as special surrogate. Such local officers, so elected to discharge the duties of county judge, or of county judge and surrogate, or to discharge the duties of surrogate in those counties where there shall be a separate officer to discharge the duties of surrogate, *shall possess all the powers and perform the duties which are possessed and can be performed by a county judge out of court*, and any proceeding commenced before any such special county judge or special surrogate may be finished by him, or he may, by order, direct that the same shall be finished by the county judge, or by the surrogate, as the case may be."

The provisions of this statute seem to confer upon the special surrogate of Oneida county all the powers and duties which are possessed and can be performed by a county judge out of court. When the statute under consideration was passed, and also when it was amended, a county judge was given express authority to grant an injunction. (Code of Procedure, § 218.) He was also authorized in an action in the Supreme Court to exercise within his county the powers of a judge of the Supreme Court at chambers. (Code of

Procedure, § 403; *People ex rel. Parr* v. *Parr*, 31 N. Y. St.. Rep., 49.)

The effect of the statute of 1849, as amended, was considered in the case of *Seymour* v. *Mercer* (13 How., 564), and it was there said: "It is entirely clear that the legislature intended to confer upon these local officers, both special county judges and special surrogates, all the powers of the county judges which they could perform out of court or at chambers, as well as all other powers, both of county judge and of surrogate, in case of inability or vacancy in the offices respectively." In that case it was held that the special surrogate of Cayuga county had authority to grant an order of arrest without regard to the questions whether the office of county judge was vacant or his inability to act.

In *Kinney* v. *Roberts* (26 Hun, 166) the special county judge of Oneida county made an order in an action in the Supreme Court requiring a party to appear and be examined under the provisions of the Code of Civil Procedure upon the application of his adversary, and in that case, Smith, P. J., in delivering the opinion of the court, said: "A question was made on the argument as to the power of the special county judge of Oneida to make the order for the examination. We think there is no reason to doubt his power. Such officer possesses all the powers and may perform all the duties of a county judge out of court. (Laws of 1849, chap. 306, as amended by chap. 108, Laws of 1851.) When the act of 1849 was passed county judges possessed the power in question (Laws of 1848, chap. 379, old Code, § 345), and the power is continued in them by the present Code (§ 872). The fact that the latter section does not mention special county judges does not divest them of the power conferred by the acts of 1849 and 1851. Those acts still operate to vest those officers with the powers possessed by county judges out of court." This case was appealed to the Court of Appeals, and the appeal was dismissed by that court. (89 N. Y., 601.)

In *Babcock* v. *Clark* (23 Hun, 391) it was held that the special county judge of Chautauqua county had power to grant an injunction. It seems that the statutes of 1849 and 1851 confer upon the special surrogate of Oneida county powers which are sufficient to authorize him to grant a temporary injunction in an action in the Supreme Court. But the appellants contend that the statutes of

1849 and 1851 have been repealed. It is not claimed that they have been expressly repealed, but the claim is, that they have been repealed by implication by the adoption of the Code of Civil Procedure. Repeals by implication are not favored in law. It is only where a later statute is repugnant to or inconsistent with an existing one, so that the two cannot be harmonized, or where the subsequent act shows that it was clearly intended to supersede the former statute, that a repeal by implication arises. (*Matter of Curser*, 89 N. Y., 401; *People ex rel. Woods* v. *Crissey*, 91 id., 616; *Mark* v. *The State*, 97 id., 578.) We find no such inconsistency between the statute of 1849, as amended, and the provisions of the Code of Civil Procedure, as to work a repeal of the former statute, nor do the provisions of the Code of Civil Procedure show that they were intended to supersede the statute of 1849. The latter is in harmony with the provisions of the Code. Both can stand together and both should be maintained and enforced.

Again, the statute of 1849, as amended, was a special statute relating only to eight of the sixty counties of the State. "It is a rule of construction that a special statute providing for a particular case, or applicable to a particular locality, is not repealed by a statute general in its terms and application, unless the intention of the legislature to repeal or alter the special law is manifest, although the terms of the general act would be taken strictly, and but for the special law, include the case or cases provided for by it." (*Van Denburgh* v. *Village of Greenbush*, 66 N. Y., 1; *Matter of Commissioners*, 50 id., 493; *Buffalo Cemetery Assn.* v. *City of Buffalo*, 118 id., 61.) "Laws, special and local in their application, are not deemed repealed by general legislation, except upon the clearest manifestation of an intent by the legislature to effect such repeal, and, ordinarily, an express repeal by some intelligible reference to the special act is necessary to accomplish that end." (*People* v. *Quigg*, 59 N. Y., 83; *Matter of Delaware and Hudson Canal Company*, 69 id., 209; *Village of Deposit* v. *Devereux*, 8 Hun, 317.) Such is the rule, even though the general law contains a general repealing clause as to inconsistent legislation. (*Whipple* v. *Christian*, 80 N. Y., 523; see, also, *People* v. *Sheridan*, 15 N. Y. St. Rep., 938.) Moreover, it was expressly held, in the case of *Kinney* v. *Roberts* (26 Hun, 166), that the

statutes of 1849 and 1851 were not repealed or annulled by the Code of Civil Procedure.

We have examined the cases cited by the appellants, but have found nothing in them which would sustain their contention that the statutes in question were repealed by the Code of Civil Procedure. Those cases are clearly distinguishable from the case at bar, hence we conclude that the statutes conferring upon the special surrogate of Oneida county the powers, and imposing upon him the duties which are possessed and can be performed by a county judge out of court, are not repealed but in full force, and, therefore, that he had authority to grant a temporary injunction in this action.

The appellants also contend that the order adjudging them guilty of contempt should be reversed, because the findings of the court and referee, that the acts of the appellants in violating the injunction were calculated to and actually did defeat, impede, impair and prejudice the rights and remedies of the plaintiff in said action, were not sustained by the evidence taken in this proceeding. The evidence and proceedings contained in the appeal book disclose that the plaintiff procured an injunction restraining the defendant, his servants, agents, assistants and assignees from selling, disposing of or drawing away any of the hay on the farm mentioned in the complaint, and that the appellants, without any application to vacate or set aside the injunction, knowingly and willfully disobeyed the order and sold and removed the hay.

That the acts of the appellants in thus removing this property, in defiance of the order of the court, were calculated to and actually did defeat, impede, impair and prejudice the rights and remedies of the plaintiff is quite manifest. The plaintiff had a right to the order granted. The officer granting it had determined that she had that right. The order was valid until set aside. " If an order within the jurisdiction of the court is imprudently or erroneously granted, the remedy of the party aggrieved is by application to vacate it or by appeal. It cannot be reviewed upon an application to punish for disobedience of it. So as long as it remains in force it is the duty of all parties to obey it." (*People ex rel. Day* v. *Bergen*, 53 N. Y., 404; *Erie Ry. Co.* v. *Ramsey*, 45 id., 637; *Barr* v. *Titus*, 75 id., 344; *People ex rel Negus* v. *Dwyer*, 90 id., 402.) While the injunction remained in force the plaintiff had a right under it to

prevent the appellants from interfering with the hay in question. She had a right to the remedy awarded her. When these proceedings were commenced the plaintiff had a right to the injunction granted and to have it enforced for the protection of her interests. That right was invaded by the appellants when they sold and removed the property which they were enjoined from removing or selling. By that act the order of the court was rendered ineffectual and the plaintiff's right and remedy under and by virtue of it were destroyed. This interference by the appellants was well calculated to, and did for a time, at least, impair, impede, prejudice and defeat both the right and remedy of the plaintiff. That the appellants subsequently became alarmed at the possible consequence of their acts and discharged their liability to the plaintiff so that she lost nothing under her contract with the defendant Emery S. Pugh, in no way deprived her of the rights which she possessed when the proceedings were instituted, nor did it discharge the appellants' liability for a wrongful interference with the property removed. As was tersely said by the judge at Special Term, "What was afterwards done by the defendant does not cure, but may mitigate." (See *King* v. *Barnes*, 113 N. Y., 476).

The appellant Stephen J. Pugh claims that as the injunction order was not served upon him, he cannot be punished for contempt in disobeying it. The referee, upon evidence which we think justified it, has found that Stephen J. Pugh, on the evening of December seventh, or on the next day, was fully cognizant of the service of such injunction and of its contents. The court, from the evidence, has also found that he, with full knowledge of such injunction order, of its contents and of the service of it upon the defendant Emery S. Pugh, while acting as the agent, servant and assistant of said defendant, aided abetted and assisted the said defendant in removing, drawing away and disposing of the hay in question. In *Koehler* v. *Farmers and Drovers' National Bank* (6 N. Y. Supp., 470; affirmed 22 N. E. R., 1134), it was held that persons who have actual knowledge of the existence of an injunction order are bound by it though it is not personally served on them. The case cited seems to be decisive of the question, and is adverse to the appellants' claim.

We are of the opinion that the findings of the court and referee

were fairly and fully justified by the evidence and papers read on the application for the order appealed from, and that no error was committed in granting that order.

Order affirmed, with ten dollars costs and disbursements.

HARDIN, P. J , concurred; MERWIN, J., not sitting.

Order affirmed, with ten dollars costs and disbursements.