IN THE MATTER OF THE APPLICATION OF JAMES BROWN, APPELLANT, FOR A WRIT OF MANDAMUS, *v.* JAMES C. DUANE, AS PRESIDENT OF THE BOARD OF AQUEDUCT COMMISSIONERS OF THE CITY OF NEW YORK AND OTHERS, RESPONDENTS.

*Mandamus — not a proper remedy for an anticipated injury — judicial notice of the acts of the Croton Aqueduct Commissioners — method of selecting employees prescribed by the Croton Aqueduct Act not repealed by section 40, chapter 490, Laws of 1883; chapter 312, Laws of 1884; chapter 464, Laws of 1887.*

The office of a writ of *mandamus* is not to redress an anticipated wrong, but to remedy one which has been already suffered.

It is not a ground for the issuing of a writ of *mandamus* that an honorably discharged soldier of the war of the rebellion, in office under the Croton Aqueduct Commissioners of the City of New York, who propose to abolish his grade, is not permitted to compete for entrance into a higher grade whose creation is contemplated.

The court will not take judicial notice of the proceedings of the Board of Aqueduct Commissioners of the City of New York.

*Semble,* that where the legislature passes an act (the Croton Aqueduct Act, § 40, chap. 490, Laws of 1883) relative to a particular public work, and the qualifications of persons employed thereon, such act will not be deemed repealed by implication by the passage of a general act giving precedence, in the matter of appointment to office in this State, to honorably discharged Union soldiers and sailors.

APPEAL by the petitioner, James Brown, from an order made at the New York Special Term, and entered in the office of the clerk of the county of New York on the 17th day of January, 1891, denying a motion for a peremptory *mandamus.*

*Roger Foster,* for the petitioner, appellant.

*D. J. Dean,* for Aqueduct Commissioners and others, respondents.

VAN BRUNT, P. J.:

This application was founded upon a verified petition, in which the appellant alleges that he was an honorably discharged Union soldier; that he was a practical mason, and that on or about the 18th day of

July, 1888, he was appointed to the position of inspector of masonry upon the new Croton aqueduct, having, prior to the appointment, passed the civil service examination; that after such appointment he entered upon the duties of such inspector and has ever since performed such duties, and is now engaged therein; that in July, 1889, the aqueduct commissioners passed resolutions that the office or grade of superintendent of dam construction be created, to rank next above inspectors of masonry, and that it should be the duty of such superintendent to superintend the construction of all dams, subject to the order and instruction of the chief engineer, etc.; and such resolution requested the chief engineer to prepare rules for the guidance and instruction of the superintendents of dams, and requested the civil service board to make provision for the examination of candidates for appointment or promotion to the grade named, and further provided that before any person should be appointed as superintendent he should pass a special examination under the direction of the chief engineer of the commission, in addition to the examination of the civil service board; that pursuant to said resolution, on notification from the commissioners, twenty-nine persons were permitted to appear before the civil service board at an examination held at the request of the aqueduct commissioners; that only five of such persons were honorably discharged Union soldiers holding office or employment under said commissioners, and the petitioner was not one of the persons thus notified and examined; that eleven honorably discharged soldiers and sailors, including the appellant, who were then in the employ of the commissioners, were excluded from such examination; that such examination was not held in accordance with the rules of the civil service board; and that no one except persons authorized by the commissioners were allowed to be examined; that the commissioners are about to appoint a certain number of superintendents of construction of dams, and that all the work upon the construction of the aqueduct, except the construction of dams and reservoirs, is nearly completed and will be completed in a very short time; and that the appellant and such other inspectors as are not appointed superintendents of construction of dams will thereupon be discharged from employment when no work other than the construction of dams and reservoirs remains to be done; and that the duties

of superintendent of dam construction are the same as those performed by the appellant as inspector of masonry.

The answer of the commissioners alleges that thirty-two inspectors had been notified and permitted to be examined before the civil service board for promotion to the grade of superintendent of dams, and they aver that all of such inspectors were then holding office under the commissioners, and not discharged for misconduct, and they admit that only those who were certified were examined by the civil service board. They deny the failure to comply with the rules of the civil service board; and they admit that the work upon the construction of the aqueduct, except the construction of dams and reservoirs, is nearly completed, and aver that the duties of superintendent of construction of dams require more experience and knowledge of all that pertains to hydraulic masonry than is required to be possessed by inspectors of masonry.

It further appears that the appellant was not certified for examination, and never applied to the Board of Aqueduct Commissioners for certification for examination by the civil service board; nor has the appellant ever applied to the commissioners for the position of superintendent of construction of dams, and no official action has been taken with respect to the abolition of the force of inspectors of masonry on the new Croton aqueduct.

The affidavit of the secretary of the civil service board is to the effect that the examination was held in accordance with the rules of the board in relation to promotion. Upon this state of facts the motion of the appellant was denied, and from the order thereupon entered this appeal is taken.

It appears from the facts upon this application that the appellant is asking for a *mandamus* against the Board of Aqueduct Commissioners in anticipation of the cessation of the work in which he is at present employed, and that in view of such cessation he desires to be appointed to another position.

Now, it has been determined *In re McGuire* (50 Hun, 203) that the provisions of the civil service law do not apply to promotions, and that they only apply to original appointments. The appellant, therefore, being in the employ of the commission, the requirements of the civil service law have been complied with; and although it is claimed by the appellant that such employment will soon cease,

until that event happens it is clear that he has no standing in court. The office of a *mandamus* is not to redress an anticipated evil or wrong, but can be only invoked to remedy a wrong which has been suffered.

This is a principle which has been repeatedly asserted in applications for *mandamus*, and in actions brought to reinstate parties in various organizations, or to prevent a threatened expulsion from such organization, in which cases it has been repeatedly held that until the wrong has been suffered the court cannot intervene. (*Thomas* v. *Musical Protective Union*, 121 N. Y., 45.)

The court below, therefore, if for no other reason, was right in denying the application of the appellant because he was in the employment of the Croton Aqueduct Board at the time of the application, and was not entitled, as matter of right, under any circumstances, to be appointed to another position at his will.

It might not be necessary to say anything further upon this point, in the disposition of this case, were it not for the claim made by the appellant that the court should take judicial notice that the Croton Aqueduct Board have, since the initiation of these proceedings, abolished the office of inspector of masonry, there being no further duties for officers of that character to perform.

We are not aware that the proceedings of the Croton Aqueduct Board are of that dignity which authorizes the court to take judicial notice thereof. Consequently, in the disposition of this application, that fact cannot be considered by the court. But, even if it were, it would make no difference in the position of the appellant. By section 40 of chapter 490 of the Laws of 1883, it was provided as follows:

"No person shall be appointed by the said aqueduct commissioners as inspector or superintendent, who shall not be certified by at least three members of the commissioners to be competent and fit for the duties of the position for which he is an applicant, and experienced in the subject-matter of the employment."

There is no pretension that there has been a compliance with this provision of the law. But it is urged, upon the part of the appellant, that this provision has been superseded by the civil service act, which provides that, in every public department and upon all public works in the State of New York, and all cities, towns and villages

thereof, and also in non-competitive examinations under the civil service laws, rules and regulations of the same, wherever they apply, honorably discharged Union soldiers and sailors shall be preferred for appointment or employment; and that thus the provisions of the act above referred to have been repealed.

It does not seem to us that this position can be maintained. The act first referred to was a special act intended to provide for a particular work in respect to which the legislative regulations were particular and precise.

It is a familiar rule of construction that where a general act conflicts with a special act the special act is not to be deemed repealed by implication. Applying this rule to the statutes in question, it will be clear that the provisions of the Croton aqueduct act in regard to the appointment of inspectors and superintendents cannot be deemed to be repealed by the civil service act.

There is no such intention manifested in the civil service act that, in appointments of this character, which were considered of such importance as to require at least three members of the commission to certify to the competency of the applicant, that such safeguards should be repealed by its general language.

It is undoubtedly true that those persons who were certified by the members of the commission as competent and fit for the duties of the position must also undergo a civil service examination. But it is equally clear that it was the plain intention of the legislature that no person should have the responsible position of inspector or superintendent without making at least a moiety of the commission personally responsible for his appointment. They are required to certify that the applicant is competent and fit for the duties of the office and experienced in the subject-matter of the employment, and the responsibility is thus placed upon them for the quality of appointees of this class.

The statute is peculiar in its language in relation to these particular appointees, the responsibility of the position being thereby expressly recognized, and the necessity of more than ordinary care in making appointments being manifested.

It seems to us it would be straining the view of a repeal by implication to assume that, after the legislature had established such safeguards against the abuse of the appointing power in reference to

appointments of this important character, it should have intended to place these appointments upon the same level as all others to which the civil service act could apply.

Upon the whole case, therefore, it seems to us that the application for *mandamus* was properly denied, and that the order should be affirmed, with costs.

Daniels, J., concurred.

Order affirmed, with costs.