LORENZO BOON AND ANOTHER, RESPONDENTS, *v.* DANIEL McGUCKEN AND OTHERS, APPELLANTS.

*Contempt — violation of an injunction by city officials — criminal and civil contempt distinguished — costs.*

On an application, in a pending civil action, to punish for contempt certain defendants, members of the common council of the city of Utica, charged with having violated an injunction which enjoined the city from making, and the members of the common council from voting to enter upon, or attempting to conclude, any contract for street paving which should require the use of asphaltum from any particular place, and not obtainable in the open market by all persons for the same price, the Special Term made an order adjudging such defendants guilty of contempt and imposing $200 fine and fifteen dollars costs upon each and committing them to jail until payment was made.

*Held*, that, as the order imposed costs, it was not to be upheld as an order in a proceeding for a criminal contempt, under sections 8 and 9 of the Code of Criminal Procedure, since the court has no power, under those sections, to impose costs.

That, assuming the proceeding to be for civil contempt, the order could not be sustained, for the reason that it did not contain the adjudication and determina-

tion required by the Code of Civil Procedure in such a proceeding, viz., that the act complained of is one "by which a right or remedy of a party to a civil action * * * may be defeated, impaired, impeded or prejudiced (§§ 14, 2266), "and that it was calculated to, or actually did, defeat, impair, impede or prejudice the rights or remedies of a party to an action," etc. (Sec. 2281.)

APPEAL by the defendants, Daniel McGucken and others, from an order made at the Onondaga Special Term and entered in the Onondaga county clerk's office on the 17th day of September, 1892, adjudging certain of the defendants guilty of contempt and fining them $200 apiece and fifteen dollars costs each, and requiring the fines to be paid to the clerk of Oneida county, and the costs and disbursements to be paid to the plaintiffs.

An injunction order was granted on the 3d day of June, 1892, by a justice of this court; a motion was made to vacate and set aside said order which was denied. It was alleged that, after the granting of the injunction and after the denial of the motion to vacate the same, on the 18th of July, 1892, the common council of the city of Utica adopted certain resolutions for which the eight defendants, as members of the common council, voted. It appeared that the resolutions were vetoed by the mayor, and that "on the twenty-second day of August, a special meeting of the council was duly held to consider and act upon said veto. At this meeting all the alderman were present except Alderman Beatty, and said resolution or ordinance for paving South street, Sunset avenue and Jewett place and Jewett street and Plant street were passed over said veto by a vote of eight alderman voting in the affirmative and three in the negative. Those voting in the affirmative were the defendants Boyce, Clark, Corcoran, Dowd, Roberts, Welch, Tessey and McGucken."

It was claimed at the Special Term that the injunction order restrained the members of the common council of the city of Utica from making any contracts with any person or corporation for the paving of any of the streets mentioned, or any part or either of them "when the concrete base will be laid, the wearing surface or pavement proper, the matrix or binding material of which is a cement prepared with the best quality of refined Trinidad asphaltum obtained from the Pitch lake in the Island of Trinidad. And from making any contract affecting said streets, or any of them requiring

asphalt pavement thereon to be of asphalt from any particular place, and not obtainable in the open market by all persons for the same price."

It is said in the opinion delivered at the Special Term, viz.: " As no actual contract in writing has been entered into between the city of Utica and the Warren-Scharf Company for paving said streets with asphalt from Pitch lake in the Island of Trinidad, technically, perhaps, there has not in this respect been a violation of the injunction. * * * But there is another prohibitory clause in said order that seems to have been intentionally disobeyed by the defendants complained of, and that is ' and each member of said common council is enjoined from voting to enter into any such contract on the part of the city of Utica, and from jointly or severally participating in concluding or attempting to conclude any such contract until the further order of the court."

In the veto message of the mayor, bearing date August 15, 1892, he said :

" The resolution, and the subsequent action of the council in the matter of Pitch lake asphalt appears to me to be a violation of the injunction. Enjoined as I am, as well as the members of the council, I cannot consent to this action, and bring the mayor * or myself into contempt. I must, for the good name of the city and my personal security, obey the law and respect the order of the court. I, therefore, return the foregoing resolution, also the ordinance based thereon for the paving of South street, as the same appears in the certified minutes of the common council, under the date of July 27, to your honorable body without my approval.

" THOMAS WHEELER,

" *Mayor.*"

Proceedings were instituted to punish the defendants for contempt, by the plaintiffs obtaining an order August.24, 1892, requiring the defendants to show cause at a Special Term to be held in September, 1892.

*Matteson & De Angelis* and *A. M. Beardsley,* for the appellants.

*Charles D. Adams,* for the respondents.

---

\* *Sic.*

HARDIN, P. J.:

(1.) It seems to be settled by authority that, in cases of criminal contempt arising under sections 8 and 9 of the Code of Civil Procedure, the court has no power to impose costs.

In *People ex rel. New York Society for the Prevention of Cruelty, etc.* v. *Gilmore* (88 N. Y., 626), it was said, viz.: " A proceeding, however, to punish for such a contempt, is a criminal proceeding, and the General Term, on reversal of the order of Special Term, has no authority to impose costs upon the relator."

In *Stubbs* v. *Ripley* (39 Hun, 627), in considering an alleged criminal contempt, it was held that the court " did not have power to impose upon the defendant $10.00 costs of the motion." In delivering the opinion in that case, DANIELS, J., said, in considering an alleged criminal contempt, viz.: "Authority to add these costs has not been given to the court by the section of the Code of Civil Procedure declaratory of the power of the court in the way of imposing punishment." The case from which the quotation has just been made was decided in the General Term of the first department in 1886.

(2.) In *Brinkley* v. *Brinkley* (47 N. Y., 40), it was held that contempt proceedings are special proceedings, and that an appeal lies from an order which is absolute in adjudging a person in contempt, and prescribing punishment.

(3.) In *People ex rel. Negus* v. *Dwyer* (90 N. Y., 410), it was held that an injunction order is a mandate, and is, therefore, included in that expression found in the sections of the Code of Civil Procedure relating to contempt. (Code of Civ. Pro., § 14.)

(4.) It has been repeatedly held that a party having knowledge of the existence of an injunction may be punished for violating it. (*Mayor, etc., of New York* v. *N. Y. and S. I. Ferry Co.*, 40 N. Y. Superior Ct. Rep., 300; S. C., affirmed, 64 N. Y., 623; *King* v. *Barnes*, 28 N. Y. St. Rep., 625; *Aldinger* v. *Pugh*, 57 Hun, 181; S. C., affirmed, 132 N. Y., 407.) And it has also been held that a disobediance of an order by a party of which he had knowledge, and which had been served on the solicitor and not himself, may be punished as for a contempt. (*The People* v. *Brower*, 4 Paige, 405; *Koehler* v. *Farmers and Drovers' Nat. Bank*, 17 Civil Pro. Rep., 307.) And the same is true, although the acts done in violation

were upon the assumption that such acts could be safely done notwithstanding the injunction. (*Gage* v. *Denbow*, 49 Hun, 42, following *Rochester, H. and L. R. R. Co.* v. *N. Y., L. E. and W. R. R. Co.*, 48 id., 190.) It was held, however, in *Koehler* v. *Farmers and Drovers' National Bank* (14 Civil Pro. Rep., 71) "that, unless personal service is made of an injunction order, that willful and deliberate intent essential to constitute a criminal contempt is wanting."

(5.) In *Duffus* v. *Cole* (39 N. Y. St. Rep., 838) the question was presented to this court as to whether the defendant was properly convicted for violating an order and injunction, and in the course of the opinion delivered it was said: "Again, the defendant was not liable for contempt, unless her act might defeat, impair, impede or prejudice the right or remedy of the plaintiff. We are unable to see how her act in any way tended to do that. There was no proof of any loss to the plaintiff. (*King* v. *Flynn*, 37 Hun, 329; *Fall Brook Coal Co.* v. *Hecksher*, 42 id., 535; S. C., 4 N. Y. St. Rep., 657.) We think the order should be reversed."

In *Rhodes* v. *Linderman* (43 N. Y. St. Rep., 520) the case of *Duffus* v. *Cole* was referred to approvingly in an opinion delivered by one of the members of this court.

(6.) It was said in *Hawley* v. *Bennett* (4 Paige, 164) that, so far as the rights of the party have been "affected by the breach of the injunction, it is no defense to the person who has been guilty of violating the same, that he did it under the advice of counsel; although, if he has acted in good faith, it may be sufficient to protect him from punishment as for a criminal contempt. The rights of parties must be protected against the wrongful acts of the adverse party, although he may have acted under the advice of counsel." The same doctrine was approved by FOLGER, J., in *Erie Railway Company* v. *Ramsey* (45 N. Y., 654); to the same effect is *People ex rel. Davis* v. *Compton and others* (1 Duer, 512; affirmed *People ex rel. Davis* v. *Sturtevant*, 9 N. Y., 263).

(7.) It is provided in section 14 of the Code of Civil Procedure as follows: "A court of record has power to punish, by fine and imprisonment, or either, a neglect or violation of duty, or other misconduct, by which a right or remedy of a party to a civil action or special proceeding, pending in the court may be defeated, impaired, impeded or prejudiced, in either of the following cases."

Then follows an enumeration of cases in eight subdivisions, and, in the fourth subdivision, it is provided that such punishment may be applied to a person for committing several enumerated acts "and for any other unlawful interference with the proceedings therein."

In *King* v. *Barnes* (113 N. Y., 476), it was held that a party who had been convicted of contempt for advising and procuring one of the defendants to disobedience of the judgment on the part of the officers of a corporation "was a civil contempt within the Code of Civil Procedure, section 14, subdivision 4." And it was also held, viz.: "Any person who interferes with the process, control or action of the court in a pending litigation, unlawfully and without authority, is guilty of a civil contempt if his act defeats, impairs, impedes or prejudices the rights or remedy of a party to such action or proceeding;" and the punishment of such a party, according to the provisions found in section 2285 of the Code of Civil Procedure, was upheld.

In *King* v. *Flynn* (37 Hun, 329), although the acts of the defendant were unlawful and contumacious, it was held that the case was within the provisions of title 3 of chapter 17 of the Code of Civil Procedure.

In *Dejonge* v. *Brenneman* (23 Hun, 333), it was alleged that an order of injunction had been granted restraining the defendants from collecting rents and the violation thereof was charged as a contempt, and, in the course of the opinion, it was said : " It does not appear, from the papers submitted on the appeal, in what way the fine above mentioned was made up, and there does not seem to be any evidence to warrant its imposition. This is a civil contempt." * * *

Title 3 of chapter 17 of the Code of Civil Procedure relates to "proceedings to punish a contempt of court other than a criminal contempt," and in section 2266 of the Code it is provided as follows: "In a case specified in section 14 of this act, * * * and a right or remedy of a party to a civil action or special proceeding pending in the court, or before the judge or the referee may be defeated, impaired, impeded or prejudiced thereby, *the offense must be punished as prescribed in this title.*" Then follows several sections relating to the practice, and in section 2281 of the Code of Civil Procedure it is provided as follows: "If it is determined that the accused has committed the offense charged, and that it was calculated

to, or actually did, defeat, impair impede or prejudice the rights or remedies of a party to an action or special proceeding brought in the court or before the judge or referee; the court, judge or referee must make a final order accordingly, and directing that he be punished by fine or imprisonment, or both, as the nature of the case requires." And in section 2285 of the Code of Civil Procedure it is provided what punishment may be inflicted for "omission to perform an act or duty which it is yet in the power of the offender to perform, he shall be imprisoned only until he has performed it," and then follows a provision in the section as follows: "In every other case, where special provision is not otherwise made by law, the offender may be imprisoned for a reasonable time, not exceeding six months, and until the fine, if any, is paid; and the order and the warrant of commitment, if any, must specify the amount of the fine and the duration of the imprisonment."

In *Moffat* v. *Herman* (116 N. Y., 131) it was held that: "Under the provisions of the Code of Civil Procedure (§§ 14, 2281, 2284), definining what is, and providing the punishment for, a civil contempt, the amount of fine which may be imposed must be based upon proof of the damages actually sustained."

In the case in hand, it appears that a decision of the motion made by the plaintiffs to adjudge the defendants in contempt, was made September 17, 1892, and signed by the judge presiding, which stated: "The motion made by the plaintiffs to adjudge the above-named defendants, Daniel McGucken (and others), aldermen, and forming a part of the Common Council of the city of Utica, in contempt for a violation of an injunction order issued in the above action, and to punish them individually for the same, is granted, and a fine of two hundred dollars is imposed upon each of said defendants, which, when paid, will be paid over to the county clerk of Oneida county, and an additional fine of fifteen dollars upon each of said defendants, which, when paid, will be paid over to the plaintiffs for their costs and disbursements in this proceeding as a punishment for said offense. An order will be entered in pursuance of the above, containing all necessary provisions, and, among others, that each of said defendants stand committed to the jail of Oneida county until the fines imposed against him are paid." Subsequently,

an order was prepared which contained the following language: "It is * * * found, upon the evidence presented, that the above-named defendants, Daniel McGucken (and others), are, and each of them is guilty of contempt of this court, and that each of them has, knowingly and willfully, disobeyed the injunction order which had been granted in this action, and duly served upon them and set forth in the moving papers, in full, in the following particulars and manner;" then follows a quotation from the injunction order, and thereafter the order contained the following: "The above-named defendants, while said order remains in full force and effect, did, as members of the common council of said city of Utica, jointly and severally and knowingly and willfully, vote to let a contract or contracts to the Warren-Scharf Asphalt Paving Company to pave the several streets above mentioned with the best quality of refined Trinidad asphaltum, to be taken and obtained from Pitch lake, in the Island of Trinidad, and did participate in concluding and in attempting to conclude said contract or contracts with said Warren-Scharf Company. For the disobedience of said defendants to said order, as above found and stated, each of said defendants are adjudged guilty of contempt. It is further ordered and adjudged that, for such acts of contempt, the said defendants, Daniel McGucken, Robert Boyce, Charles F. Clark, Michael F. Corcoran, John L. Dowd, John E. Roberts, John Welch and Joseph Tessey be and they are each fined, and a fine is imposed upon each for the sum of two hundred dollars, which said fines, when collected, shall be paid to the county clerk of Oneida county. It is further ordered and adjudged that each of said defendants be and they are fined the further sum of fifteen dollars, which, when collected, shall be paid to the plaintiffs for their costs and disbursements in this proceeding. It is further ordered and adjudged that each of said defendants stand committed to the jail of Oneida county, in the city of Utica, until said fines imposed upon him are paid, or he is discharged according to law. The proper process will be issued to the sheriff of Oneida county for the execution of this order. This order will be entered in the Oneida county clerk's office;" and it was signed by the judge presiding at the Special Term. The order does not contain any provision in pursuance of section 14 declaring that "a right or remedy of a party

to a civil action or special proceeding pending in the court may be defeated, impaired, impeded or prejudiced " thereby or the equivalent; nor the language found in section 2281 of the Code of Civil Procedure, viz.: " If it is determined that the accused has committed the offense charged, and that it was calculated to, or actually did, defeat, impair, impede or prejudice the rights or remedy of a party to an action or special proceeding, brought in the court or before the judge or referee; the court, judge or referee must make a final order accordingly, and directing that he be punished by fine or imprisonment, or both, as the nature of the case requires."

In *Matter of Swenarton* v. *Shupe* (40 Hun, 42) it was held " that as the punishment exceeded that which the court was authorized to inflict by section 9 of the Code of Civil Procedure, for a criminal contempt, it was to be assumed that the proceedings were instituted under the provision of the Code authorizing the punishment of a person for a contempt in a civil action for misconduct by which a right or remedy of another may be defeated, impaired, impeded or prejudiced. That, assuming the order to have been made under such latter provisions, it was void, because no adjudication was made that the misconduct complained of was calculated to or actually did defeat, impair, impede or prejudice the rights or remedies of the petitioner, or that the latter had sustained any loss or damage thereby."

The doctrine of the above case was followed in *Dinsmoor* v. *Commercial Travelers' Association* (14 N. Y. Supp., 676). And in *Sandford* v. *Sandford* (40 Hun, 540) it was held that " to punish a party for contempt in a civil proceeding, his conduct must be such as to defeat, impair, impede or prejudice a right or remedy of the party affected by it, and that fact must be ascertained and adjudged by the court directing the punishment which is to be imposed."

In *Wheelock* v. *Noonan* (55 Sup. Ct. Rep. [J. &. S., 23], 305), section 2281 of the Code of Civil Procedure was referred to and a construction thereof was given in accordance with the views expressed by us in *Dinsmoor* v. *Commercial Travelers' Association (supra)*.

In *Fischer* v. *Raab* (81 N. Y., 235) it was held, " in proceedings under the provisions of the Code of Civil Procedure (§ 14), to punish as a contempt an act of misconduct or neglect of duty, in a

civil action pending, it must be made to appear that the act or omission complained of is one ' by which a right or remedy of a party * * * may be defeated, impaired, impeded or prejudiced,' and this must be adjudged to authorize the infliction of the punishment.'"

We think the decision and order, to which reference has been made, pronounced by the Special Term, because they contained no such adjudication and determination as are provided for by sections 14, 2266 and 2281 of the Code of Civil Procedure, should not be sustained.

( 8.) The order to show cause recites that the summons and complaint and the injunction, and all the papers on which the injunction was granted, were read. The order made at the Special Term, brought here by appeal, does not recite the summons and complaint as having been read at Special Term when the order was made, and the appeal book does not contain the complaint. It does contain, however, numerous affidavits in which it is stated by the defendants that they intended to comply with the injunction order, and to avoid any act which would in any way, in letter or spirit, violate the same, and that all their acts were done openly without any attempt at concealment, and that they had the advice of the city attorney that they were at liberty to perform the several acts which are alleged to be in violation of the injunction order, and that by such acts they would not violate the injunction order, and that they acted upon his advice, relying upon it, and in good faith.

It was said, in *People ex rel. Kelly* v. *Aitken* (19 Hun, 329), by the General Term in the second department, viz. : "If, for example, one, after careful examination, wrongly interpret, and, through this mistake, disobey an order, the majesty of the law is not offended nor the dignity of the court impaired ; and, as he is innocent of willful offense, the infliction of punishment could have no justification. The willful disobedience expressed in the statute means conduct, intentionally and designedly, at variance with the mandate of the court." The complaint of the plaintiff not being found in the appeal book the full objects of the action are not ascertainable, although it is inferred that the action was begun by taxpayers, under section 1925 of the Code of Civil Procedure, to restrain waste.

In *Talcott* v. *The City of Buffalo* (125 N. Y., 280) it was held that the remedy, under that section, "is confined to cases where the

acts complained of are without power, or where corruption, fraud or bad faith, amounting to fraud, is charged; the words 'waste' and 'injury' include only illegal, wrongful or dishonest illegal action." And in *Ziegler* v. *Chapin* (126 N. Y., 348) *Talcott* v. *The City of Buffalo* was referred to in the following language: "We have quite recently declined to become arbitrators between taxpayers and their municipal officers in every instance of disagreeing opinions or conflicting judgments,' and have decided that, jurisdiction in the officials existing, the courts can interfere in actions like that before us only where some fraud or collusion or bad faith is alleged and proved."

By reason of the absence of the complaint, and because the affidavits used at the Special Term are very conflicting, and by reason of the views already expressed which lead to a reversal, we omit any comment upon the merits of the application, and rest our conclusion upon the views already expressed.

We think the order appealed from should be reversed, with costs.

MARTIN and MERWIN, JJ., concurred.

Order and decision reversed, with one bill of costs.