THE PEOPLE ex rel. JOHN LARDNER v. SAMUEL A. CARSON.

(Supreme Court — Niagara Circuit, November, 1894.)

The provision of the charter of the city of Lockport permitting voters of the town of Lockport to vote at places in the city, to be designated by the supervisor and mayor, is not unconstitutional.

An act to incorporate a city is not rendered invalid under article 3, section 16 of the Constitution, by the fact that it contains provisions adjusting the rights and interests of the people of the territory from which the city is taken, as that is a subject that may reasonably be embraced in or be connected with the subject of incorporation.

The prohibition in the Constitution against the passage of a local bill designating the places of voting has no application to a statute passed prior to the adoption of such provision.

The section of the charter of the city of Lockport in relation to voting was not repealed by the General Election Law of 1892.

Where the people and the officers whose duty it is to execute a law have, for a long series of years, given a practical construction to it upholding its validity, this fact may be considered in determining the question of its constitutionality.

ACTION to establish the right of John Lardner, the relator, to the office of superintendent of the poor of Niagara county, and to put him in possession of the office.

*W. H. Ransom*, for the People and relator.

*Charles Hickey* and *John E. Pound*, for defendant.

WARD, J. This action was tried by the court, a jury being waived by the parties. The facts are undisputed and are as follows:

On March 11, 1808, Niagara county, in this state, was created, and the legislature, on the 2d day of February, 1824, by chapter 27 of the laws of that year, erected the town of Lockport, defining its boundaries. On March 26, 1829, the legislature incorporated the village of Lockport (Chap. 78, Laws of 1829), taking the territory for said village from the heart of the town of Lockport, leaving the residue of the town entirely surrounding the village, and creating it "a body politic and corporate," and granting to it the powers ordinarily vested

in incorporated villages. This act was silent as to the people of the remaining portion of the town voting within the village, neither permitting nor prohibiting it.

From 1829 to 1865 the voters of the town of Lockport held their elections and town meetings at convenient points in the village duly selected by the officers charged with that duty.

By chapter 365 of the Laws of 1865 the legislature incorporated the city of Lockport, and the act of incorporation was entitled "An act to incorporate the city of Lockport." The territory incorporated as a city was the village of Lockport and some additional territory taken from the town of Lockport, the town surrounding the city on all sides.

By the second section of title 9 of that act, it was provided that "The town of Lockport shall continue to be one of the towns of Niagara county, embracing all the territory included within the present town of Lockport, excepting that which is included within the limits of the city corporation organized by this act." Provisions were made whereby certain rights, privileges and liabilities of the village of Lockport were reserved, and, by the eighteenth section of said title, it was further provided that "town meetings and general election of the inhabitants of the town of Lockport, as hereby constituted, may be held at such places in the city of Lockport as the supervisor of said town and mayor of said city may appoint, with the same force and effect as if held in said town. And it shall be lawful for the town clerk of said town to hold his office in and reside within said city. The business to be done at such office may be done in said city."

On April 10, 1886, the legislature passed an act (Chap. 120, Laws of 1886) entitled "An act to revise the charter of the city of Lockport."

The charter of the city was revised to some extent, and important changes made, but no new territory was added, and section 18, above quoted, was retained in the revised charter, being section 269 thereof. And from the time of the incorporation of the city down to and including the election of 1892, a period of twenty-seven years, the town meetings and

elections of the town of Lockport were duly held by the proper officers under appointments made pursuant to this provision of the statute at convenient places in the city of Lockport. The officers whose duty it was to provide polling places for the electors provided no other places than the ones in the city of Lockport. So that the voters of the town, while Lockport was a village, and after it became a city and down to and including the election of 1892, had to vote at the places appointed in the village and city or be disfranchised and not vote at all. And up to this time no complaint had been made or legal action taken in regard to said elections being held as above stated, but the elections seem to have been conducted to the entire satisfaction of the people.

At the general election held for the year 1892, on November eighth, there was to be chosen in Niagara county a superintendent of the poor for the county for the term of three years, beginning January 1, 1893, for which the relator, John Lardner, and the defendant, Samuel A. Carson, were candidates, and were voted for and received the votes of electors in said county, and at said election the votes cast by the electors of the several election districts were returned in the usual form, and the statements thereof, signed by the inspectors of election of the several election districts in said county, respectively, were canvassed by the county board of canvassers, and said board declared that there had been cast by the electors of said county at said election for said office as follows: For Samuel A. Carson, 6,755 votes; for John Lardner, 6,747 votes; which result was declared and certified by the board of canvassers, and they further certified that the defendant was duly elected to said office, and issued a certificate of election to him, and he entered upon the duties of his office, and has since continued in said office and has received the salary thereof.

At the time of the election in 1892 the town of Lockport, outside of the city, had been divided into two election districts. The polling place for district No. 1, appointed under the charter, was held at a store building known as No. 11, on

the north side of Main street, in the city. The polling place for district No. 2 was in a store building, No. 49, east side of Locust street, in the city. Only voters of the town of Lockport voted at said polling places. The polling places for the city were distinct from those, and none of the voters of the city voted at the town polling places, nor did the voters of the town vote at the city polling places. The polling places for the town were designated as well by the town board, who met for that purpose. The total vote for superintendent of the poor at the town polling places was 514, of which the relator had 178, and the defendant had 336, leaving a majority for the defendant of 158. It is apparent, therefore, that if the vote of the town of Lockport is rejected the defendant, Carson, was not elected, as his majority was barely eight in the whole county, giving him the benefit of the vote of the town of Lockport.

It is not claimed that there was any fraud at the election, or any illegal votes cast at the polling places where the voters of Lockport exercised the elective franchise; nor was it claimed that the votes as cast did not represent the wishes of the voters.

The relator was a resident of the city of Lockport, aware of the proceeding of the election for the town, and took no steps affecting such election until after the result was declared and the certificate awarded to the defendant.

It is now claimed by the relator that the elections held in the city for the town were invalid, and the votes thereat void, for four reasons:

*First.* Void under section 1 of article 2 of the state Constitution, which is as follows: " Every male citizen of the age of twenty-one years who shall have been a citizen for ten days and an inhabitant of this state one year next preceding an election, and the last four months a resident of the county, and for the last thirty days a resident of the election district in which he may offer his vote, shall be entitled to vote at such election in the election district of which he shall at the time be a resident, and not elsewhere, for all offices," etc., and

that the act of the legislature in permitting the citizens of Lockport to vote in the city is unconstitutional.

*Second.* That the act is invalid and of no effect because the title of the revised charter of the city does not express the purpose of the act in relation to permitting the voters of the town of Lockport to vote in the city, and it embraces more than one subject, and is in violation of article 3, section 16 of the Constitution, which provides that " No private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title."

*Third.* That the clause in the city charter providing for the elections of the town is unconstitutional under article 3, section 18 of the Constitution, which provides, among other things, that the legislature shall not pass a private or local bill in regard to " the opening and conducting of elections or designating places of voting."

*Fourth.* That the section of the charter in relation to voting was repealed by the General Election Law of 1892, chapter 680, which provided another method.

If the relator's contention prevails the determination of the electors of Niagara county at the election in 1892, so far as it concerns the superintendent of the poor, must be annulled and set aside, and the voters of the town of Lockport disfranchised; and it will follow that those voters had not constitutionally exercised the right of suffrage for over twenty-seven years.

A result so disastrous and far reaching should not be permitted, except for the gravest reasons.

The voters of the town of Lockport were endowed by the Constitution with the right of suffrage. The machinery by which that right was to be exercised under the Constitution was to be provided by the legislature.

The village and city of Lockport were carved out of the town, leaving the remaining portion of the town a rim around the city where the voters dwelt, and great inconvenience would result to them if in consequence of the creating of the city they were not permitted to vote at the central portion of the territory of the original town.

31

The legislature, therefore, in taking a portion of the town to make the city, had the subject of this inconvenience before them at the time of the change created by the city charter, and provided for it.

It will be observed that the Constitution as it existed at the time of this election does not require the voter to vote in the town or the ward of his residence, as was required by the Constitution of 1821, but simply requires him to vote in the election district in which he resides. The Constitution does not define what an election district is or its boundaries, but leaves that to the legislature. The legislature has power in defining an election district to devolve that duty upon subordinate agencies, and that is necessarily so, as it would be impracticable for the legislature to do so otherwise.

The effect of the legislative action in this case is that in taking the territory of the city from the town and depriving its people of the benefits thereof there has been reserved the right of the people to vote as theretofore at convenient places in the town as originally constituted, and by such reservation the place of voting in the city, to be selected under the act, is a part of the election district of the voters of the town of Lockport and where they reside.

Before the incorporation of the city, and while the village existed, no legal objection existed to the voters of the town voting in the village at any point that should be designated by the proper officers. The jurisdiction of the village over the territory embraced in it was simply superadded to the town jurisdiction, the authority of the town remaining in full force except that given to the village. It is notorious that in most of the incorporated villages of this state town elections are held, those villages usually being in the central portion of the town, where it is most convenient for the voters of the town to assemble. When the city was incorporated this right of the town voter was not taken away, but was expressly reserved and reaffirmed in the charter of the city, so that the voter of the town never lost or surrendered the right to vote anywhere in the city that should be designated by the

proper officer for that purpose.    It was a fundamental condition of the incorporation of the city that that right should remain unimpaired to the voters of the town, and so far as that right went the old town remained the same as though neither village nor city was incorporated, and hence it follows that the voting place selected was in law and in fact in the district of the voter and of his residence.

Therefore, this case is different from the one which the learned counsel for the relator has assumed exists.    His assumption is that the legislature has taken the town voter out of the district of his residence, and placed him in another in violation of the Constitution, whereas the legislature only left the voter where it found him and his original election district unchanged.

Again, the legislature in creating an election district is not bound by town lines.    It can make a district of contiguous territory anywhere in the county.    The omission of towns, as provided in the Constitution of 1821, from the later Constitutions is significant in this regard.

The legislature can make a district from parts of several towns, or of a part of a city and a town, or a village and a town, and all this will be constitutional.    Has the legislature, in effect, done more in this instance than to provide that the election district of the voters of the town shall embrace portions of the city ?

Similar legislation to that contained in the original and revised charter of the city upon this subject has obtained in other cases.    The legislature, by section 25 of chapter 478 of the Laws of 1893, has provided that the town of Olean may hold its annual and special elections for town officers and town meetings within the corporate limits of the city of Olean, etc. The city of Olean was taken from the town of Olean.    And by chapter 134 of the Laws of 1870 it is provided that Indians, being qualified voters, residing upon the land of any tribe in the state, may vote in the election district nearest their place of residence, in the same town, at any election therein.

A statute should not be declared unconstitutional except in

a very clear case, particularly so where the effect of such a declaration is to deprive the citizen of a substantial right.

Every presumption is in favor of the constitutionality of the acts of the legislature.   *   *   *   It is only in cases of clear and substantial departure from the provisions of the fundamental law that courts will declare acts of the legislature invalid.   *Gilbert Elevated Railway Company* v. *Anderson*, 3 Abb. N. C. 434; *People* v. *Briggs*, 50 N. Y. 553.

A polling place for a township may be legally established in an adjacent borough.  *In Re Election Inspection*, Penn. Com. Pl. ; 2 Penn. Dist. Rep. 299.

In *Peard* v. *State*, 51 N. W. Rep. 828, a commissioner district of a county included a part of one of the wards of the city.   The district was subdivided for election purposes in such manner that the voters thereof who resided within the wards could not vote within the district, the only voting place in said ward being outside of the district.   At a general election certain residents of the district, and also of the ward, who were legal voters of the district, voted at the voting place of said ward.   It was admitted that all of the votes were cast by legal voters of the district, *at the only voting place provided for them*, and that the election was in all respects legally conducted.   Held, that the voting by said electors outside of the commissioner district was a mere irregularity, and that the votes should be counted.   The court, in this case, seems to have proceeded upon the principle that the voter was not to be deprived of his suffrage because the authorities, whose duty it was to designate a legal place for him to vote, had failed in that duty.   Indeed, many cases can be found where elections have been sustained at places different from the places appointed, in the absence of fraud or imposition upon the voters, as in the case of *Dale* v. *Irwin*, 78 Ill. 170, where the election judges had appointed a store for the election, which the owner would not permit to be used, and the voters repaired to a building near by and voted there.

In *People* v. *Laine*, 33 Cal. 55, it was held that an incorporated city lying in parts of two townships may be laid off into

election districts by making one or more districts in that part of the city lying in each township. The first contention of the relator, therefore, cannot be sustained.

As to the second objection, that the purpose of the legislative act is not declared in the title of the revised charter, reference must be had to both the original and revised charter. The purpose of the Constitution in requiring the subject of the act to be embraced in the title is to have a statement broad enough in the title to specify the subject-matter of the act, and the rule in such cases is well stated in *The Matter of the Petition of Knaust*, 101 N. Y. 194, that "where it expresses a general object, it must now be considered as the settled rule of construction that all matters fairly and reasonably connected with it, and all measures which will or may facilitate its accomplishment, are proper to be incorporated in the act and are germane to the title." Citing *People* v. *Briggs*, 50 N. Y. 553; *In re Mayer*, Id. 504; *In re Department of Public Parks*, 86 id. 437; *In re Upson*, 89 id. 67; *Water Commissioners of Clinton* v. *Dwight*, 101 id. 9. To which authorities may be added *Van Brunt* v. *Town of Flatbush*, 128 id. 50; *Wrought Iron Bridge Company* v. *Town of Attica*, 119 id. 204; *In the Matter of the Application of the Mayor, etc., to Acquire a Public Park*, 99 id. 569.

The subject stated in the title of the original act of 1865 was to incorporate the city of Lockport, and the subject stated in the act of revision of 1886 was to revise the charter of the city of Lockport. If a city is to be incorporated territory must be taken for that purpose, and it follows that the rights and interests of the people of that territory, or of the town or place from which it is taken, is a subject that may reasonably be embraced in, or be connected with, the subject of incorporation. It would be difficult to find a statement of the purpose of the act more comprehensive than the one here stated.

Now, if the time comes when you are to make a revision of the charter, or to change the act incorporating the city, a clearer or more comprehensive statement could not be made than was adopted in this case, to revise the charter, nor can it

be said that two subjects are embraced in this act, within the meaning of the cases, or of the Constitution, because the creation of this city, defining its territory, adjusting the rights of the people of the territory with reference to the changes made necessary by the incorporation of· this city, are but one subject, although they may relate to different matters connected with the same subject.

It must, therefore, be held that this contention of the relator is unfounded.

The third objection is also without merit. The provision of the Constitution (Art. 3, § 18) forbidding the legislature passing a local bill designating the places of voting was first inserted in the Constitution in 1875, ten years after section 18 of the original charter authorizing the voting in the city had been enacted. The revision of the charter in 1886 did not change that section, except to give it a different number in the revision of the charter. So that it is not affected by the constitutional provision invoked. Constitutions are not to be construed as having a retroactive effect.

If the revision of the charter is to be regarded as an amendment of this section it is valid, because a charter existing before · the constitutional prohibition was adopted may be amended afterwards. *Reed* v. *Schmit*, 39 Hun, 223.

If section 18 is to be regarded as re-enacted in 1886, that does not repeal by implication that section in the act of 1865, but it stands as of the date of the original enactment. *Powers* v. *Shepard*, 48 N. Y. 540.

The fourth and last objection, that the section of the charter providing for the election in the city was repealed by the General Election Law of 1892, is equally untenable. The General Election Law does not, in terms, repeal that provision of the charter, and it will not be presumed that the legislature, by a general act, intended to repeal this special act by implication. This conclusion is strengthened by the fact that the General Election Law specifies what laws are thereby repealed, and does not include the act in question.

The proposition here submitted is sustained in the following

cases : *People* v. *Quigg,* 59 N. Y. 83 ; *Whipple* v. *Christian,* 80 id. 523 ; *Buffalo Cemetery Association* v. *Buffalo,* 118 id. 61 ; *Aldinger* v. *Pugh,* 57 Hun, 181 ; *Matter of Brown* v. *Duane,* 60 id. 98 ; *Van Denburgh* v. *Village of Greenbush,* 66 id. 1 ; opinion of Attorney-General Rosendale, rendered in this matter on the date of September 2, 1892.

In the determination of this case weight must be given to the fact that for more than a quarter of a century the acts of the legislature in question have been acted upon, executed and sustained by all the parties interested and by all the officials whose duty it was to carry out their purpose and accomplish their execution, without dissent or exception from any source whatever until the commencement of this action. While, perhaps, the people cannot strictly be estopped by the longest acquiescence in unconstitutional legislation, yet it may be said that the legislature and the people and the officers whose duty it was to execute these laws have given a practical construction to them upholding their validity, which may be considered in determining the question of their constitutionality, and as bearing upon this question see *Easton* v. *Pickersgill,* 55 N. Y. 310 ; *People* v. *Dayton,* Id. 367.

The views above expressed lead to the conclusion that the plaintiffs cannot maintain this action, and the complaint must be dismissed upon the merits, with costs.

Complaint dismissed, with costs.

---

Tʜᴇ Pᴇᴏᴘʟᴇ ex rel. Cʜᴀʀʟᴇs Yᴏᴜɴɢ *v.* Jᴀᴍᴇs C. Sᴛᴏᴜᴛ, as Agent and Warden of Auburn State Prison.

(Supreme Court—Monroe Special Term, November, 1894.)

The Supreme Court has no power to stay proceedings upon a final order discharging a prisoner in habeas corpus proceedings pending an appeal from such order.

Mᴏᴛɪᴏɴ by the defendant for a stay of proceedings, pending an appeal to the Court of Appeals from a final order upon habeas corpus discharging the relator.